**RECORD NOS. 13-4326; 13-4426**

In The

# United States Court of Appeals

For The Third Circuit

## FOOD TEAM INTERNATIONAL LTD,

*Plaintiff – Appellee/Cross-Appellant*,

**v.**

## UNILINK LLC; AKBAR BOUTARABI; GARY GREGORY; MARC BEHAEGEL; MIKE MOORE; PENNSYLVANIA FOOD GROUP LLC,

*Defendants – Appellants/Cross Appellees*.

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

———————

**BRIEF OF APPELLANTS AND JOINT APPENDIX VOLUME I OF II (Pages 1 – 104)**

———————

Mark C.H. Mandell
ATTORNEY AT LAW
42 Herman Thau Road
Annandale, New Jersey 08801
(908) 638-4434

*Counsel for Appellants Cross-Appellees*

**THE LEX GROUP** ♦ 1108 East Main Street ♦ Suite 1400 ♦ Richmond, VA 23219
(804) 644-4419 ♦ (800) 856-4419 ♦ Fax: (804) 644-3660 ♦ www.thelexgroup.com

## United States Court of Appeals for the Third Circuit

## Corporate Disclosure Statement and
## Statement of Financial Interest

No. 132-4326
_____

Food Team International Ltd.

v.

Unilink, LLC et.al.

Instructions

Pursuant to Rule 26.1, Federal Rules of Appellate Procedure any nongovernmental corporate party to a proceeding before this Court must file a statement identifying all of its parent corporations and listing any publicly held company that owns 10% or more of the party's stock.

Third Circuit LAR 26.1(b) requires that every party to an appeal must identify on the Corporate Disclosure Statement required by Rule 26.1, Federal Rules of Appellate Procedure, every publicly owned corporation not a party to the appeal, if any, that has a financial interest in the outcome of the litigation and the nature of that interest. This information need be provided only if a party has something to report under that section of the LAR.

In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate shall provide a list identifying: 1) the debtor if not named in the caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and, 3) any entity not named in the caption which is an active participant in the bankruptcy proceedings. If the debtor or the bankruptcy estate is not a party to the proceedings before this Court, the appellant must file this list. LAR 26.1(c).

The purpose of collecting the information in the Corporate Disclosure and Financial Interest Statements is to provide the judges with information about any conflicts of interest which would prevent them from hearing the case.

The completed Corporate Disclosure Statement and Statement of Financial Interest Form must, if required, must be filed upon the filing of a motion, response, petition or answer in this Court, or upon the filing of the party's principal brief, whichever occurs first. An original and three copies must be filed. A copy of the statement must also be included in the party's principal brief before the table of contents regardless of whether the statement has previously been filed. Rule 26.1(b) and (c), Federal Rules of Appellate Procedure.

If additional space is needed, please attach a new page.

(Page 1 of 2)

Pursuant to Rule 26.1 and Third Circuit LAR 26.1,

## Unilink, LLC

(Name of Party)

makes the following disclosure:

1) For non-governmental corporate parties please list all parent corporations: Pennsylvania Food Group, Inc.

2) For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock:

None

3) If there is a publicly held corporation which is not a party to the proceeding before this Court but which has as a financial interest in the outcome of the proceeding, please identify all such parties and specify the nature of the financial interest or interests:

None

4) In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate must list: 1) the debtor, if not identified in the case caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and, 3) any entity not named in the caption which is active participant in the bankruptcy proceeding. If the debtor or trustee is not participating in the appeal, this information must be provided by appellant.

Not Applicable

## s/Mark C. H. Mandell

(Signature of Counsel or Party)

Dated: 11/12/13

**rev: 12/1998**          (Page 2 of 2)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................... iii

STATEMENT of SUBJECT MATTER JURISDICTION ........................................1

STATEMENT of APPELLATE JURISDICTION ....................................................1

STATEMENT of THE ISSUES ................................................................2

STATEMENT of THE CASE ................................................................3

STATEMENT of RELATED CASES ................................................................8

SUMMARY of ARGUMENTS................................................................8

ARGUMENTS ................................................................10

    POINT I    ON THE RECORD MADE, DEFENDANTS
             COMMITTED NO BREACH OF FIDUCIARY DUTY
             UNDER THE PACA TRUST....................................................10

             The Summary Judgment Record............................................10

             Standard of Review................................................................14

             The Trial Record ................................................................14

             Standard of Review................................................................18

    POINT II    THE ACTIONS TAKEN TO PRESERVE AND
             PROTECT THE UNILINK PACA TRUST RES WERE
             PROPER AND IN FULL COMPLIANCE WITH BOTH
             THE STATUTORY AND REGULATORY
             PROVISIONS IMPOSED UNDER THE PACA ....................18

       Standard of Review ................................................................20

POINT III   DEFENDANT-APPELLANTS FULLY PERFORMED
              THEIR DUTIES UNDER THE PACA TRUST ......................21

POINT IV   THE DISTRICT COURT MISAPPLIED CREDITS
              DUE AND PAYMENTS BY UNILINK IN
              DETERMINING THE AMOUNT OF PERSONAL
              LIABILITY OF THE INDIVIDUALS ....................................22

       Standard of Review ................................................................27

CONCLUSION ....................................................................................27

COMBINED CERTIFICATIONS

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Bear Mountain Orchards, Inc. v. Mich-Kim, Inc.*,
623 F.3d 163 (3d Cir. 2010) .......................................................12, 13, 16, 17

*Foodsource v. Harvin Foods, Inc.*,
2010 WL 2331462 (D. Del., June 9, 2010) ..................................................15

*Golman-Hayden Co. v. Fresh Source Produce Inc.*,
217 F.3d 348 (5th Cir. 2000) ........................................................................16

*Morris Okun, Inc. v. Harry Zimmerman, Inc.*,
814 F. Supp. 346 (S.D.N.Y. 1993) ..............................................................16

*Sanzone-Palmisano Co. v. M. Seaman Enters.*,
986 F.2d 1010 (6th Cir. 1993) ......................................................................11

*Wise-Buy Services, Inc. v. Paglia*,
411 F.3d 415 (3d Cir. 2005) ...................................................................13, 15

*ZAS Intern. Agr. v. ZAS USA Inc.*,
1998 WL 469958 (E.D. Pa., Aug. 7, 1998) .................................................15

## STATUTES

7 U.S.C. § 499 ....................................................................................................1

7 U.S.C. § 499b(4) .....................................................................................13, 23

7 U.S.C. § 499e(c)(2) .......................................................................................13

7 U.S.C. § 499e(c)(5) ..................................................................................1, 19

28 U.S.C. § 1291 ................................................................................................1

28 U.S.C. § 1331 ................................................................................................1

28 U.S.C. § 1367(a) ............................................................................................1, 20

U.C.C. § 2-709 .........................................................................................................23

**RULE**

Fed. R. Civ. P. 56.1 ...............................................................................................10

**REGULATION**

7 C.F.R. § 46.46(d)(1)............................................................................................13

## STATEMENT of SUBJECT MATTER JURISDICTION

Jurisdiction over the subject matter of this case in the District Court was invoked in the Plaintiff's Complaint pursuant to the Perishable Agricultural Commodities Act (hereinafter "PACA") 7 U.S.C. § 499e(c)(5) as an action to enforce payment from the PACA Trust res held for Plaintiff's benefit, and 28 U.S.C. § 1331 because Plaintiff/Appellee's causes of action arose from interstate sales of perishable agricultural commodities by Plaintiff to Defendant-Appellant 7 U.S.C. § 499 (hereinafter referred to as the "PACA"), a United States statute regulating interstate commerce. Plaintiff further asserted supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

## STATEMENT of APPELLATE JURISDICTION

Appellate jurisdiction is based upon 28 U.S.C. § 1291 governing appeals from final decisions of the U.S. District Courts because the within appeal is from a final order and judgment of the U.S. District Court for the District of Pennsylvania entered September 30, 2013.  The requisite Notice of Appeal from said judgment was filed in the District Court on October 30, 2013, less than 30 days after entry of the judgment and orders under review.

## STATEMENT of THE ISSUES

1.      Upon the evidence available to it prior to the trial, in light of controlling precedent in this Circuit, did the District Court err in imposing actual liability for Unilink's PACA Trust debt to Plaintiff upon Defendant-Appellants Gregory, Boutarabi and Behaegel? [J.A.-274 through 292 and Post-trial Memorandum D.E. 85].[1]

The question should be answered: Yes.

2.      Upon the record made of uncontested facts established at the trial of the within action, did the District err in declining to amend its Decision and Order of May 18, 2012 to the extent that said Decision and Order imposed actual liability for Unilink's PACA Trust debt to Plaintiff upon Defendants-Appellants Gregory, Boutarabi and Behaegel in error? [J.A.-274 through 292 and Post-trial Memorandum D.E. 85].

The question should be answered: Yes

3.      Since there were no liens or claims upon it, did deposit of the net proceeds from the sale of Unilink's assets to Seneca Foods into the possession of Unilink's sole stockholder, PFG, constitute breach or improper performance of

---

[1] Citations to the record not included in the Joint Appendix are to the docket entries ("D.E.") in the District Court, Eastern District of Pennsylvania. For a list of all docket entries, see J.A. 105-118.

Defendants' fiduciary obligations under the PACA Statutory Trust and the USDA

Regulations issued? [JA-274 through 292 and by Post-trial Memorandum D.E. 85].

    The question should be answered: No.

    4.    Did Plaintiff-Appellee's dismissal, <u>with prejudice</u>, of all of its claims

against Pennsylvania Food Group LLC, constitute waiver and/or abandonment of

its claims under the PACA Trust as asserted against the remaining Defendants,

Appellants herein? [J.A.-274 through 292 and Post-trial Memorandum D.E. No.

85.]

    The question should be answered: Yes.

    5.    Did the District Court misapply sums paid to Plaintiff-Appellee by

Unilink and others for the commodities actually delivered to Unilink by Plaintiff?

[J.A.-274 through 292 and Post-trial Memorandum D.E. 85].

    The question should be answered: Yes.


## STATEMENT of THE CASE

**The Basis Of The Action**: Plaintiff-Appellee brought the underlying action

seeking to enforce payment from the res of assets held by Defendant-Appellant

Unilink for the benefit of all of its unpaid suppliers of produce.  Plaintiff-

Appellee's Complaint [J.A.-119] in six counts alleged causes of action a) to

enforce payment from the PACA Trust res, b) for damages for conversion of

PACA Trust assets, c) for damages for breach of contract, d) for damages for failure to pay for produce subject to the PACA, and e) for damages for breach of fiduciary obligation.

**The Proceedings Below:**  The underlying action was commenced on July 21, 2010 by filing the Complaint in the U.S. District Court, Eastern District of Pennsylvania. Defendants filed a unified Answer [J.A.-138], asserted affirmative defenses including payment for the commodities in issue, and Defendant-Appellant Unilink, LLC asserted counterclaims for damages for a) breach of contract including increased cost for replacement commodities for shipments rejected, and b) consequential damages in connection with storage of rejected shipments of Plaintiff's commodities.

Discovery terminated in mid-November, 2011.  Plaintiff filed a Motion for Partial Summary Judgement on December 9, 2011.  Defendants filed their opposition to Plaintiff's Motion, and the motion was argued before the District Court on February 7, 2012.  A bench trial was scheduled to commence on May 14, 2012.  With the Plaintiff's Motion still pending, the parties made their pre-trial submissions of proposed facts and conclusions in late April, 2012.  After several day-to-day adjournments of the bench trial, the Court issued its Decision and Order partially granting and partially denying Plaintiff's Motion for Partial Summary Judgment which was faxed to counsel in the evening of May 17, 2012 and entered

4

on the case docket of May 18, 2012.  The bench trial commenced on May 18, 2012

and continued for four days through May 24, 2012.  On June 5, 2012 Defendants

moved to correct their trial exhibit 4 which was discovered to be incomplete.

Plaintiff opposed the application however the Court granted Defendant's

application [J.A.-363-365].  Final Post-trial submissions were made by all parties

on June 21, 2012.

The Trial Court issued its final Adjudication [J.A.-61] and Verdict [J.A.-59]

on September 30, 2013 and a civil judgment [J.A.-103] was entered against

Defendant-Appellant Unilink, LLC on October 1, 2013.  The Court's Adjudication

reiterated its prior ruling on partial Summary Judgment and denied Defendant-

Appellants' request, based upon the trial record, *inter alia*, to reconsider its

interlocutory ruling holding individual Defendant-Appellants Gregory, Boutarabi,

and Behaegel personally liable to Plaintiff.

Defendant-Appellants filed their Notice of Appeal on October 30, 2013,

within 30 days after entry of the District Court's Final Orders and Judgment.

***Statement of Facts***:  Defendant-Appellant Unilink, LLC (hereinafter "Unilink")

was a Pennsylvania limited liability company licensed to engage in the interstate

produce business by the U.S. Department of Agriculture [J.A.-294] since February

19, 2004.  Former Defendant Pennsylvania Food Group, LLC (hereinafter "PFG")

was listed as a principal of Unilink and was the sole stockholder of Unilink [J.A.-270].

Defendant-Appellant Gary Gregory was an officer of Unilink, the signer on its checking account [J.A.-241], and was Treasurer of PFG [J.A.-271].

Defendant-Appellant Akbar Boutarabi was an officer of Unilink and stockholder in PFG, was Unilink's plant and production manager but was not authorized to sign Unilink's checks and had no involvement with or authority over Unilink's accounts payable [J.A.-240-241, J.A.-250-251].

Defendant-Appellant Mark Behaegel was Vice President of Unilink in charge of the company's equipment and machinery and packing operations.  He was also President of another company which sourced raw produce and then processed and sold it to Unilink.  Behaegel was not paid by Unilink, could not sign Unilink checks, and his sole input into Unilink's accounts payables was limited to sums owed to his company, Agrifrost, for produce sold to Unilink [J.A.-248 through 250].

During October and November 2008 the Plaintiff and Unilink negotiated detailed installment contracts for the sale by Plaintiff to Unilink of frozen Chinese broccoli, cauliflower, and red pepper strips for shipment and delivery to Unilink in Rheems, PA from January through August of 2009 [J.A.-242 through 247].  All terms of the contracts, including price (delivered), credit/payment terms (30 days),

shipping terms (f.o.b. Rheems), grade and quality (US Grade A), shipping schedules, and quantities were agreed upon and confirmed in a series of faxes and emails between the parties.  [J.A.-295 through 310].

During the Spring of 2009, Unilink began finding insects in shipments of Plaintiff-Appellee's broccoli.  Some of the discoveries were made after Unilink had already paid for the commodities.  Unilink then rejected the disputed shipments and sent them to an outside cold storage facility.  When the disputes over the contaminated goods were not resolved, Unilink terminated the balance of the installment contacts.

Plaintiff-Appellee resold the rejected commodities, obtaining resale prices near if not above the original contract prices in the Unilink contracts except one container of cauliflower and some of the broccoli.  [J.A.-311 through 329, Chart C attached].

In early August 2010 all of Unilink's assets, plant, inventory, equipment and accounts receivable were sold to Seneca Foods.  All of Unilink's accounts payable, except for sums owed to Plaintiff-Appellee, were paid off, and the net proceeds of the sale were placed in PFG.  All net proceeds of the sale to Seneca, amounting to approximately $1,400,000.00, were held in PFG, Unilink's sole stockholder, with no distributions of those funds being made to anyone, including but not limited to Defendant-Appellants Boutarabi, Behaegel and Gregory, over the years between

the Seneca sale and the start of the trial of the within.  Other than the Plaintiff-Appellee's claim, up to the time of the trial of the within action there were no liens or claims on PFG or the Unilink/Seneca sale proceeds it held which remained freely available to pay Unilink's PACA Trust obligations to Plaintiff-Appellee. [J.A.-267 through 273].

## STATEMENT of RELATED CASES

This case has not previously been before this Court, and there are no related cases or matters pending between the parties involved in the within appeal.

## SUMMARY of ARGUMENTS

1.    On the record submitted on the Plaintiff's Motion for Partial Summary Judgment, the District Court was presented with no evidence of conversion or a breach of fiduciary obligations by any of the individual Defendant-Appellants and therefore the District Court had no legal or factual basis upon which to impose personal liability on those individuals as stated in the Decision and Order entered May 18, 2012.

2.    Since the uncontested evidence in the trial record established that Defendant-Appellants Boutarabi and Behaegel had no control over the Unilink

bank account or the account payable to Plaintiff, it was improper and without basis in law or fact to hold them liable to Plaintiff-Appellee for Unilink's obligations.

3.     While Defendant-Appellant Gregory exercised full operational control over Unilink, including its bank account and accounts payable to Plaintiff and other suppliers, he cannot be held personally liable to Plaintiff since the PACA assets of Unilink, comprising many times the maximum amount of Plaintiff's PACA Trust claim were held and maintained in a manner "freely available" to pay Plaintiff's claims.

4.     Plaintiff-Appellee's dismissal, with prejudice, in open Court of all claims against PFG, the disclosed custodian of the PACA Trust res resulting from the sale of Unilink's assets, constituted waiver and/or abandonment of its first cause of action, pled in the Complaint as seeking to enforce payment from the statutory trust res, and barred its claims against the individual defendants, Appellants herein, regardless of their positions with Unilink.

5.     The District Court failed to properly credit Unilink with both payments made for shipments that were rejected as well as for the amounts which Plaintiff admits it received when it resold the rejected commodities to others. Those sums should have been properly applied to each of the transactions to which they pertained which would have resulted in reduction of the Plaintiff's total PACA Trust-qualified claim to the sum of $27,255.62.

## ARGUMENTS

## POINT I

## ON THE RECORD MADE, DEFENDANTS COMMITTED NO BREACH OF FIDUCIARY DUTY UNDER THE PACA TRUST

***The Summary Judgment Record:***

The entirety of factual contentions and evidence submitted in support of Plaintiff-Appellee's Motion for Partial Summary Judgment was comprised of the Declaration of Dale Brunton [J.A.-176] and the movant's Statement of Facts under F.R.C.P. Rule 56.1 [J.A.-148].  Neither of those documents, nor anything else submitted to the District Court on the motion contained even so much as an allegation regarding either conversion of PACA Trust funds or breach of fiduciary obligation by any Defendant.  Consequently, Defendants' Reply under F.R.C.P Rule 56.1 [J.A.-193] did not address issues that were not placed before the Court, and merely responded to what the Movant had filed.  Indeed, Plaintiff-Appellee's Motion was focused on and limited to claims concerning the actual shipments of commodities and disputes over defects in the commodities and repudiation of the contracts and purchase orders by Unilink.  The District Court was presented with neither evidence nor issue within the scope of the motion that could form the basis for its ruling in the May 18, 2012 Decision and Order holding Defendants Akbar Boutarabi, Mark Behaegel, and Gary Gregory personally liable to Plaintiff-Appellee for any sum.  While the District Court appeared to understand that

corporate officers may be held *secondarily liable* under the PACA, the Court made no finding of any breach of fiduciary obligation by any of them nor did it even address the issue of whether the PACA Trust res of Unilink's assets was insufficient to satisfy Plaintiff-Appellee's claims under the statutory trust, the baseline requirement for imposing secondary liability on corporate officers.

It is now black-letter law under the PACA that a purchaser operating subject to the statute holds its assets derived from the proceeds of its sale of produce in trust for its produce suppliers who preserve their rights under the PACA statute's procedures. It is also well settled that the assets held by that PACA trustee are presumed to be part of the trust res until proven otherwise. This negative tracing rule was first established in the Sixth Circuit case of *Sanzone-Palmisano Co. v. M. Seaman Enters.*, 986 F.2d 1010 (6th Cir. 1993). Consequently, all of Defendant-Appellant Unilink's assets were presumed to be PACA Trust assets and thus, when those hard assets like the inventory, machinery, and equipment were liquidated and sold to Seneca Foods, all of the $1,400,000 in net sale proceeds that were placed in the protective custody of Unilink's sole stockholder and statutory principal, PFG, were the sum total of the PACA Trust res; a sum constituting many times over what was owed to the Plaintiff-Appellee thus precluding any imposition of secondary liability on the individual Defendants because of a shortfall in the trust res. Upon what, then, did the District Court base its imposition of personal

11

liability?  The Court went outside the motion papers and seized upon the

generalized statement in Defendants' Pre-Trial Statement of Facts at No. 24 which

simply stated that the three individuals had discretionary control over Unilink.

[J.A.-214-216].  That factual statement was, of course, true in a general sense, but

it was also far too vague to serve as justification for the District Court's action,

especially so in that it did not specify the extent of each individual's control.  More

importantly, while the District Court cited this Circuit's controlling precedent,

*Bear Mountain Orchards*, *Inc. v. Mich-Kim*, *Inc.*, 623 F.3d 163 (3d Cir. 2010) on

the topic of core control, the Court completely ignored the operative fact that the

*Bear Mountain* corporate defendant had gone out of business with less than

$100,000 in assets available to meet its PACA Trust liability of over $800,000.

Consequently, the District Court ignored the fundamental requirement that before

the officers of a corporation may be held personally liable for their company's

debts to PACA Trust-qualified creditors, it must be shown that the company's

assets are insufficient to meet its obligations to its unpaid produce suppliers who

have preserved their rights as beneficiaries under the PACA Trust.  Such a factual

finding is absolutely required before the corporate officers can be held to have

breached any fiduciary obligation, let alone somehow converted or dissipated

PACA Trust assets.  Whether or not Boutarabi, Behaegel, or Gregory held

positions of "core control" over Unilink was and is irrelevant until and unless the

PACA Trust res of freely available assets derived from Unilink's operations were shown to be insufficient to meet the Trust obligation owed to Plaintiff-Appellee.

Breach of fiduciary obligations is a tort in this Circuit. *Wise-Buy Services, Inc. v. Paglia*, 411 F.3d 415 at 423 (3d Cir. 2005). It is black-letter law that in order to recover on a claim in tort, the plaintiff must prove four things: 1. A duty, 2. Breach of that Duty by the defendant, 3. Damages sustained by the plaintiff that were proximately caused by the breach, and 4. Foreseeability of both the damages and the claimant. The duty to preserve PACA Trust assets is statutory (see 7 U.S.C. § 499b(4), 7 U.S.C. § 499e(c)(2), and 7 C.F.R. § 46.46(d)(1)). However, the entire Record of the Motion for Partial Summary Judgment is barren with regard to a breach of any duty imposed by the PACA Trust by Unilink or by the individual Defendants, and the District Court made no "finding" that any such breach had occurred. The Motion Record was likewise barren on the question of damage from an alleged breach of fiduciary duty imposed by the PACA Trust. The absence of such proof is not surprising since it was well known to all that $1,400,000.00 in liquidated Unilink assets derived from the sale to Seneca Foods were being held by its sole stockholder, Pennsylvania Food Group LLC. It is thus apparent that the District Court went outside the scope of the submitted motion, cited but then either ignored or misunderstood the controlling precedent of *Bear Mountain* and the case authorities which led to its rule, ignored the standard of

13

proof required in tort cases, and improperly imposed personal liability on the

Unilink officers when no liability, let alone what appears to be "strict liability"

based on mere positions of control, could be sustained.

### Standard of Review:

Whether the Court reviews the District Court's May 18, 2012 Decision and

Order based upon a *de novo* review or on a plain error / mistake of law standard,

the imposition of liability upon Akbar Boutarabi, Marc Behaegel, and Gary

Gregory must be reversed.

### The Trial Record:

The Plaintiff rested its case on May 18, 2012 without calling a single witness

or submitting any evidence other than what was contained in its exhibits.  Plaintiff

submitted not a shred of evidence that tended to establish that any named

Defendant in this case was guilty of the torts of conversion or breach of fiduciary

duty.  The only damages that Plaintiff-Appellant alleged in regard to its rights as

beneficiary under the PACA Trust was nonpayment on three invoices to Unilink

which totaled less that $71,000, and for which the District Court determined that

less than $27,000 remained due [see Decision and Order of the District Court, May

18, 2012, J.A.-41-42].  The undisputed evidence at trial established that

approximately $1,400,000.00 in Unilink PACA Trust funds were, at the time of

trial, being held by then Defendant PFG, that those funds had been held free of any

14

liens or claims other than Plaintiff-Appellee's own demands, and thus were preserved and held "freely available" to discharge any PACA Trust obligation for monies due Plaintiff-Appellee.  Plaintiff-Appellee made no attempt to rebut such evidence nor proffer any evidence to the contrary nor provide any evidence that PFG's custody of the res prejudiced Plaintiff-Appellee's ability to be paid for its Trust-qualified transactions.  The total absence of an attempt to meet the basic standard of proof for tort liability under the PACA Trust is all the more surprising when it is remembered that counsel for Plaintiff-Appellee herein was also the trial and appellate counsel for the plaintiff in *Weis-Buy Services* and knew or should have known that his proofs would be measured by tort claims standards.

It is well for the Court to note at this juncture, that mere non-payment for produce received is not a breach of fiduciary obligations under the PACA Trust. See *Foodsource v. Harvin Foods*, *Inc.*, 2010 WL 2331462 at *1 (D. Del., June 9, 2010) citing *ZAS Intern. Agr. v. ZAS USA Inc.*, 1998 WL 469958 at *2 ( E.D. Pa., Aug. 7, 1998).  This is especially so when the claims are disputed as they have been in the within action.

Personal liability of officers and directors of PACA licensees is predicated on those persons misusing the assets in their company's possession; essentially committing the tort of dissipation of a trust res which is a breach of fiduciary obligation and can, in certain circumstances, amount to conversion of the funds

15

misused. Such was the situation in the seminal case of *Morris Okun*, *Inc. v. Harry Zimmerman*, *Inc*., 814 F. Supp. 846 (S.D.N.Y. 1993) where the corporate principal misused the PACA Trust assets under his control to pay business expenses such as rent and payroll **resulting to the company's having insufficient assets to pay** the PACA Trust-qualified plaintiff what was due for the produce sold and delivered. The Trial Record in the case now before this Court establishes beyond any question that $1,400,000 in liquidated assets of Defendant-Appellant Unilink were continuously held, protected, and maintained as freely available to cover any liability to Plaintiff-Appellee under the PACA Trust, a liability that the proofs before the District Court has established to be less than $30,000.

The total lack of evidence necessary to impose liability on the individual Defendant-Appellants in the Motion Record was reiterated in the Trial Record. In this Court's ruling in *Bear Mountain*, in addition to addressing the issue of qualifying and quantifying the amount of control over a licensee's PACA assets that is needed for imposition of personal liability, this Court adopted the 2-part test for personal liability under the PACA Trust expressed in *Golman-Hayden Co. v. Fresh Source Produce Inc.*, 217 F.3d 348 at 351 (5th Cir. 2000), to wit

> "[I]ndividual shareholders, officers, or directors of a corporation who are in a position to control trust assets, *and who breach their fiduciary duty to preserve those assets*, may be held personally liable under PACA." [Emphasis supplied]

Plaintiff-Appellee did not submit a shred of evidence at the trial of any act or omission by any Defendant, whether corporate or individual, in this action that was inconsistent with Unilink's obligations under the PACA Trust or that constituted or resulted in dissipation of the Unilink PACA Trust such that there were insufficient PACA Trust assets freely available to pay Plaintiff-Appellee's PACA Trust-qualified claims in full. Aside from the fact that the uncontroverted evidence in the Trial Record established that Defendant Boutarabi (the plant manager with no authority over the bank account or the accounts payable) and Defendant Behaegel (the unpaid vice president in charge of the packing machinery with no ability to sign on the Unilink bank account) never had the kind of control over Unilink's assets required for liability under the *Bear Mountain* test, with $1,400,000 in funds remaining freely available in the custody of Unilink's sole stockholder, Plaintiff-Appellee was not only completely unable to show any breach of the obligations imposed upon all Defendants, including former Defendant PFG but also didn't even attempt to establish any damages it sustained from such an alleged breach. The Trial Record is *completely barren of any evidence* of an "act or omission" by any Defendant that could, let alone did, result in a dissipation of PACA Trust assets resulting in insufficient money being available to pay Plaintiff-Appellee in full for all sums owed to it as a beneficiary under the PACA Trust. The Trial Record is thus devoid of evidence of an actionable tort of breach of fiduciary

17

obligation by any Defendant resulting in compensable damages to Plaintiff-Appellee.

At the close of the Trial, and in their post-trial submissions, the District Court's errors in imposing personal liability were brought to the District Court's attention, and the Court was asked to revisit its Decision and Order of May 18, 2012 and reverse itself with regard to its imposition of personal liability on Defendant-Appellants Boutarabi, Behaegel, and Gregory. The District Court refused to do so even in the context of both the great weight of the factual evidence in the record and its clearly erroneous application of the controlling law.

***Standard of Review***:

Whether this Court applies the abuse of discretion standard or reviews the trial record using a clearly erroneous standard, the District Court's refusal to correct its errors and relieve the individual Defendant-Appellants from personal liability to Plaintiff must be reversed and rendered with instructions to dismiss Plaintiff-Appellee's claims against the individuals.

**POINT II**

**THE ACTIONS TAKEN TO PRESERVE AND PROTECT THE UNILINK PACA TRUST RES WERE PROPER AND IN FULL COMPLIANCE WITH BOTH THE STATUTORY AND REGULATORY PROVISIONS IMPOSED UNDER THE PACA**

If Plaintiff is now unable to obtain compensation for its rights under the PACA Trust, it is due to its own actions. The District Court denied Plaintiff-

Appellant's Motion for Partial Summary Judgement as against then Defendants

Michael Moore and Unilink's corporate parent, PFG.  On the first day of the

scheduled trial Plaintiff-Appellant addressed the Court and upon its own motion

with no input or urging from either the Court or the Defendants, proceeded to

move to dismiss all of its claims against Moore and PFG.  After an extensive

explanation of the consequences by the Court on the Record of May 18, 2012,

Plaintiff-Appellee, by its authorized representative, Dale Brunton, placed under

oath by the Court, abandoned all of its claims (for the second time), including a

cause of action for "conversion" of PACA Trust assets against former Defendant

PFG, [J.A.220-237], <u>even after it had been told in Defendants' Answers to</u>

<u>Interrogatories in September, 2011</u> [Plaintiff's Trial Exhibit 26, at question and

answer No. 17, J.A.-330 through 341] that all the Seneca Foods sale proceeds were

being held by PFG.  The Court is reminded that Plaintiff-Appellant's primary

claim, **indeed the core basis of its invoking the District Court's subject matter**

**jurisdiction**, was to enforce its rights to payment from the PACA Trust assets

allegedly held in Trust by the named defendants.  The Complaint in this action was

based upon the remedy for unpaid suppliers and jurisdiction of the District Courts

established by Congress in 7 U.S.C. § 499e(c)(5).  On May 18, 2012 Plaintiff-

Appellant had complete knowledge and information with regard to the amount of

the PACA Trust assets being held as well as the identity of the Defendant holding

those assets.  Plaintiff-Appellee's completely voluntary dismissal of PFG, the

disclosed custodian of the PACA Trust res constituted a complete and utter waiver

of its rights not only to enforce payment from the Trust res, but also waived its

rights to seek damages from the individual Defendants, and may have deprived the

Trial Court of its jurisdiction over the subject matter of the Plaintiff-Appellee's

claims under the PACA Trust.  Although the Complaint did invoke Supplemental

Jurisdiction under 28 U.S.C. § 1367(a), Plaintiff-Appellant neither pled nor proved

any claim against the individual Defendant-Appellants that would have allowed the

District Court to continue an action against them, and should have required a

retroactive dismissal of all claims against the individual Defendant-Appellants.

The entire Record of the case now before the Court establishes that not only

were the individual Defendant-Appellants' acts or omissions not the proximate

cause of any loss or damage incurred by Plaintiff-Appellee, but rather it was

Plaintiff-Appellee's own act, at trial, that amounted to its abandonment of its rights

under the PACA Trust and was the sole competent and intervening proximate

cause of any damages it may ultimately have incurred.

### Standard of Review:

The District Court's refusal to enforce the waiver and abandonment by the

Plaintiff-Appellee was Plain error.

## POINT III

## DEFENDANT-APPELLANTS FULLY PERFORMED
## THEIR DUTIES UNDER THE PACA TRUST

As discussed hereinabove, Defendant-Appellant Unilink and its fully

empowered officer were obligated to carry out their statutory duties under the

PACA to protect the res of PACA Trust assets that were derived from Unilink's

operations in the interstate produce business. Not only did Defendant-Appellants

never breach a fiduciary duty under the PACA Trust, but instead they transformed

hard assets like machinery and equipment plus intangible assets like accounts

receivable into cold hard cash and then held that money, totaling many times over

what Plaintiff-Appellee was owed, such that it remained freely available to

Plaintiff in full for every transaction in which Plaintiff-Appellee preserved its

rights under the Statutory Trust. Defendants, in full discharge of their fiduciary

obligations under the PACA could do no more. When Unilink's assets were sold

to Seneca Foods in 2010, and the company's operations were terminated, there was

one place, and only one place, for the liquidated PACA Trust assets to be held.

That was in the possession and control of its controlling and sole stockholder,

Pennsylvania Food Group, LLC. Placing the assets in the custody of PFG did not,

however, relieve Mr. Gregory or any other controlling stockholders of PFG from

their obligations to insure that PFG properly held the assets in trust, and

maintained them in a manner that would insure that they were freely available to

21

discharge any and all liability to the PACA Trust-qualified creditors of Unilink. The undisputed evidence at the trial of this action was that Defendant-Appellants did exactly that. Defendant-Appellants could have done no more to carry out their obligations under the PACA Trust.

Plaintiff-Appellant knew, since being served with Defendants' Answers to Interrogatories in September 2011 [Plaintiff's trial Exhibit 26, J.A.-330-341] that PFG was holding the PACA Trust assets derived from the sale to Seneca. Plaintiff-Appellee could have objected to that situation, and was also free to move the Court to have an appropriate portion of those funds placed in the District Court's Registry pending a final outcome in the case. Plaintiff-Appellee did nothing, thereby precluding itself from any claim that PFG's custody of the PACA Trust assets derived from the Seneca Foods sale was improper.

## POINT IV

### THE DISTRICT COURT MISAPPLIED CREDITS DUE AND PAYMENTS BY UNILINK IN DETERMINING THE AMOUNT OF PERSONAL LIABILITY OF THE INDIVIDUALS

It is hornbook law, requiring no citation for authority, that every claimant seeking damages for breach of a contract must be prepared to prove that its damage demand is an amount that will place it in the same position it would have been had the other party not breached the contract.

These basic principals of contract law apply to all contracts, including those, as in the case now before this Court, involving the sale of goods. All remedies, whether for buyers or sellers, under Article 2 of the Uniform Commercial Code or the provisions of the PACA and the Regulations issued pursuant thereto are premised on these simple requirements. U.C.C. § 2-709 provides a seller of goods with an action for the contract price of the goods. Section 2(4) of the PACA 7 U.S.C. § 499b(4) makes failing to pay in full for a produce transaction to be unfair conduct and the basis of a cause of action for damages. However, there is no rule or law that provides that a seller is entitled to be paid twice for the same goods, but the trial evidence established just such a scenario.

When the District Court held the individual Defendant-Appellants liable to Plaintiff-Appellee in the May 18, 2012 Decision and Order for more than $105,000.00, it did so subject to the amount being reduced by payments and offsets to be determined at trial. Defendant-Appellants submitted documentary evidence of all of Unilink's payments to Plaintiff-Appellee [J.A.-348-356, J.A.-360-362] for the 2009 shipments delivered to Unilink. It also included payments for commodities that were later rejected and resold to others by Plaintiff-Appellee resulting in Plaintiff-Appellee receiving far more than the contract price for the commodities it actually delivered to Unilink. Following Chart A identifies all commodities rejected by Unilink.

CHART A

Quantities of Food Team Commodities Received And Then Rejected By Unilink

| Food Team Invoice No. | Commodity | Pounds Rejected[2] |
|---|---|---|
| 28CFF01019 | Broccoli Florets | 33,525 |
| 29CFF01008 | Broccoli Florets | 41,154 |
| 29CFF01012 | Broccoli Florets | 7,044 |
| 29CFF01014 | Broccoli Florets | 43,240 |
| 29CFF01015 | Broccoli Florets | 43,240 |
| 29CFF04111 | Cauliflower | 49,928 |

Following Chart B sets forth the entries from Defendants' Trial Exhibits 1

and 4 showing Unilink's documented payments on invoices for rejected

commodities.

CHART B
Unilink Payments Against Shipments
Received But Later Rejected

| Food Team Invoice No. | Commodity | Invoice Amount | Payment[3] Amount | Pounds | Pounds Received | Rejected | Amount |
|---|---|---|---|---|---|---|---|
| 28CFF01019 | Broccoli Florets | $23,540.00 | $23,540.00 | 44,000 | | 33,525 | $17,935.88 |
| 29CFF01012 | Broccoli Florets | $22,598.40 | $22,598.40 | 42,240 | | 7,044 | $ 3,768.54 |
| 29CFF01014 | Broccoli Florets | $23,133.40 | $23,133.40 | 43,240 | | 43,240 | $23,133.40 |
| 29CFF04111 | Cauliflower | $21,756.00 | $ 786.24 | 51,800 | | 49,928 | |
| Amount Paid | | | | | | | $44,837.82 |

Following Chart C extracts the amounts from Plaintiff-Appellee's Trial

Exhibit 23 establishing exactly what Plaintiff-Appellee received on its resale of the

delivered and rejected commodities.

---

[2] Source: Defendants' Trial Exhibit 4B [J.A.-360-361].
[3] Defendants' Trial Exhibits 1 [J.A.-348] and 4B.

CHART C

Compensation Received by Food Team For Shipments
Received By But Later Rejected By Unilink

| Food Team Invoice No. | Payments or Source | | Composite Amount Paid Food Team On Invoice | | Proceeds in Excess Of Invoice Price |
|---|---|---|---|---|---|
| | Unilink | Resale[4] | | | |
| 28CFF01019 | $23,540.00 | $23,540.00 | $19,276.43 | $42,996.43 | $19,276.43 |
| 29CFF01008 | $23,475.80 | $ 1,458.41 | $23,117.85 | $24,576.26 | $ 1,100.46 |
| 29CFF01012 | $22,598.40 | $22,598.40 | $ 4,521.78 | $27,120.18 | $ 4,521.78 |
| 29CFF01014 | $23,133.40 | $23,133.40 | $20,805.80 | $43,939.20 | $20,805.80 |
| 29CFF01015 | $23,133.40 | ------------- | $20,557.40 | $20,557.40 | ( $ 2,576.00) |
| 29CFF04111 | $21,756.00 | $    786.24 | $17,452.67 | $18,238.91 | ( $ 3,517.09) |
| Net Excess Proceeds For Defendants' Credit and Offset | | | | | $39,611.38 |

Following Chart D blends the trial evidence stated in Charts A, B, and C into a running balance calculation on all of the invoices in dispute with the credits and established that the maximum amount that was due to Plaintiff-Appellee for all commodities delivered to Unilink, **including all transactions qualified under the PACA Trust**, was the exact principal sum of $27,255.62.

---

[4] Source: Plaintiff's Trial Exhibit 23 with attached redacted invoices [J.A.-310-329].

CHART D

Application of Payments, Excess Compensation, and Credits
To Food Team Invoices For Shipments Received By Unilink

| Food Team Invoice No. | Invoice Amount | Payment or Source Unilink[5] | Resale[6] | Total Paid[3] On Invoice | Amount Applied To Invoice | Excess Amount[7] | Balance Forward To Next Invoice |
|---|---|---|---|---|---|---|---|
| 28CFF01019 | $23,540.00 | $23,540.00 | $19,276.43 | $42,996.43 | $23,540.00 | $19,276.43 | $19,276.43 |
| 29CFF01008 | $23,475.80 | 1,458.41 | 23,117.85 | 24,576.26 | 23,475.80 | 1,100.46 | 1,100.46 |
| | | | | | | | $ 20,376.89 |
| 29CFF01012 | $22,598.40 | $22,598.40 | 4,521.78 | 27,120.18 | 22,598.40 | 4,521.78 | 4,521.78 |
| | | | | | | | 24,898.67 |
| 29CFF01014 | $23,133.40 | $23,133.40 | 20,805.80 | 43,939.20 | 23,133.40 | 20,805.80 | 20,805.80 |
| | | | | | | | 45,704.47 |
| 29CFF01015 | $23,133.40 | ------------- | 20,557.40 | 20,557.40 | 2,576.00 | -2,576.00 | ( 2,576.00) |
| | | | | | | | 43,128.47 |
| 29CFF04111 | $21,756.00 | 786.24 | 17,452.67 | 18,238.91 | 3,517.09 | -3,517.09 | ( 3,517.09) |
| | | | | | | | 39,611.38 |
| 29CFF02901 | $26,330.40 | ---------[8] | | 26,330.40 | | | (26,330.40) |
| | | | | | | | 13,280.98 |
| 29CFF04115 | $21,319.20 | ------------ | | 21,319.20 | | | ( 21,319.20) |
| | | | | | | | ( 8,038.22) |
| 29CFF01017 | $23,133.40 | -------------- | | | | | (23,133.40) |
| | | Gross Amount due Plaintiff for Shipments Delivered | | | | | 31,171.62 |
| Other Deductions and Credits | | Consent Judgment for 1st Counterclaim[9] | | | | | 3,916.00 |
| Net Amount Owed by Unilink for All Received Shipments | | | | | | | $27,255.62 |

The forgoing accounting evidence was presented to the District Court as part
of the Defendant-Appellant's Post trial submissions to further support of
Defendant-Appellant's request for the Court to modify its calculations for personal
liability on the part of the individual defendants.  The Court declined to do so
notwithstanding that the quantification of the maximum PACA Trust liability for

---

[5] See Defendants' Trial Exhibit 1 with attached checks and Chart B.
[6] See Plaintiff's Trial Exhibit 23 with redacted resale invoices for resale of rejected commodities and Chart C.
[7] See Chart C.
[8] Invoice listed on Unilink Check No. 13698 but remittance stub deductions disallowed by trial Court.
[9] Tr. 5/18/2012 @ pp. 62-70 [J.A.-234].

all Defendants, whether "primary" on the part of Unilink or "secondary" on the part of the individual defendants was only $27,255.62.

***Standard of Review***:

The District Court's continued imposition of more than $105,000 in PACA Trust liability on any Defendant was clearly erroneous and contrary to the great weight of the evidence.

## CONCLUSION

For all the reasons set forth in the arguments above, and upon the authorities cited herein, Defendant-Appellants respectfully requests that the questions presented be answered in the affirmative in accordance with the applicable law and authorities cited, and that the Court issue a mandate reversing the District Court's Orders holding the individual Defendant-Appellants personally liable to Plaintiff-Appellee, dismissing the Plaintiff-Appellee's claims under the PACA Statutory Trust, and, in the alternative, limiting all Defendant-Appellants' liability under the PACA Trust to the principal amount of $27,255.62.

Respectfully Submitted:

May 27, 2014

<u>/s/ Mark C. H. Mandell</u>
Mark C. H. Mandell
*Attorney for Defendant-Appellants*
42 Herman Thau Road
Annandale, NJ 08801
(908)638-4434

## COMBINED CERTIFICATIONS

I, Mark C. H. Mandell, hereby certify:

1.  That this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 5,902 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  That this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5), and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced serif typeface using Microsoft Word 2007 in 14-point Times New Roman font.

3.  Pursuant to Local Rule 46.1, that Mark C. H. Mandell is a member in good standing of the bar for the United States Court of Appeals for the Third Circuit.

4.  That text of the electronic brief is identical to the text in the paper copies.

5.  That a virus detection program (McAfee VirusScan Enterprise, Version 8.7i) has been run on the electronic file and no virus was detected.

Dated:  May 27, 2014                    /s/ Mark C. H. Mandell
                                        *Counsel for Appellants*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that the Brief of Appellants and

Joint Appendix were filed electronically with the Clerk of the Court for the United

States Court of Appeals for the Third Circuit using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the

appellate CM/ECF system.

Dated:  May 27, 2014                    /s/ Mark C. H. Mandell_____
                                        *Counsel for Appellants*

**RECORD NOS. 13-4326; 13-4426**

*In The*

# United States Court of Appeals

### For The Third Circuit

## FOOD TEAM INTERNATIONAL LTD,

*Plaintiff – Appellee/Cross-Appellant*,

**v.**

## UNILINK LLC; AKBAR BOUTARABI; GARY GREGORY; MARC BEHAEGEL; MIKE MOORE; PENNSYLVANIA FOOD GROUP LLC,

*Defendants – Appellants/Cross Appellees*.

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

### JOINT APPENDIX
### VOLUME I OF II
### (Pages 1 – 104)

---

Mark C.H. Mandell
ATTORNEY AT LAW
42 Herman Thau Road
Annandale, New Jersey  08801
(908) 638-4434

Peter N. Kessler
KUTAK ROCK
50 South 16th Street
Two Liberty Place, Suite 28B
Philadelphia, Pennsylvania  19102
(215) 299-4384

Michael J. Keaton
KEATON LAW FIRM
707 Lake Cook Road, Suite 300
Deerfield, Illinois  60015
(847) 934-6500

Leslie B. Baskin
SPECTOR, GADON & ROSEN
1635 Market Street, 7th Floor
Philadelphia, Pennsylvania  19103
(215) 241-8926

*Counsel for Appellants/*
  *Cross-Appellees*

*Counsel for Appellee/*
  *Cross Appellant*

*Counsel for Appellee/*
  *Cross-Appellant*

**THE LEX GROUP** ♦ 1108 East Main Street ♦ Suite 1400 ♦ Richmond, VA  23219
(804) 644-4419 ♦ (800) 856-4419 ♦ Fax: (804) 644-3660 ♦ www.thelexgroup.com

# TABLE OF CONTENTS
## VOLUME I OF II

**Appendix Page**

**Defendants' Notice of Appeal**
      **filed October 30, 2013** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1**

**Plaintiff's Notice of Cross-Appeal**
      **filed November 13, 2013** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**

**Opinion of**
**The Honorable James Knoll Gardner**
**Re: Presentation and Resolution of Issues and Counterclaims**
**Scheduled at Non-Jury Trial**
      **filed May 18, 2012** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**

**Order of**
**The Honorable James Knoll Gardner**
**Re:  Granting Summary Judgment in Favor of Plaintiff**
      **filed May 18, 2012** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **54**

**Verdict of**
**The Honorable James Knoll Garnder**
      **filed September 30, 2013** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **59**

**Adjudication of**
**The Honorable James Knoll Gardner**
      **filed September 30, 2013** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **61**

**Civil Judgment**
      **filed October 1, 2013** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **103**

# TABLE OF CONTENTS
## VOLUME II OF II

**Appendix Page**

Docket Entries . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 105

Complaint,
With Cover Sheet,
     filed July 21, 2010 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 119

Answer to Complaint with
Affirmative Defenses and Counterclaims,
     filed August 17, 2010 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 138

Attachments to
Plaintiff's Motion for Summary Judgment
     filed December 10, 2011:

     Plaintiff's Statement of Undisputed Material Fact in
     Support of Motion for Summary Judgment
          dated December 10, 2011 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 148

     Affidavit of Dale A. Brunton in Support of
     Motion for Partial Summary Judgment without Exhibits
          sworn December 9, 2011 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 176

Defendants' Response to Statement of
Material Facts Alleged by Plaintiff to be
Undisputed Pursuant to F.R.C.P. Rule 56.1
     filed January 3, 2012 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 193

Defendants' Pretrial Statement of Facts with
Proposed Conclusions of Law, List of Trial Witnesses, and
List of Exhibits
     filed April 30, 2012 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 214

Excerpts of Transcript of Non-Jury Trial Proceedings before
The Honorable James Knoll Gardner
     on May 18, 2012 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 220

Excerpts of Transcript of Non-Jury Trial Proceedings before
The Honorable James Knoll Gardner
    on May 21, 2012 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 238

       **Testimony of Nurdin Hasagic:**

       Direct Examination  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 240

       **Testimony of Gary Hasagic:**

       Direct Examination  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 242

       **Testimony of Marc Behaegel:**

       Direct Examination  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 248
       Cross-Examination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 252

Excerpts of Transcript of Non-Jury Trial Proceedings before
The Honorable James Knoll Gardner
    on May 22, 2012 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 253

       **Testimony of Sue Haar:**

       Direct Examination  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 255

Excerpts of Transcript of Non-Jury Trial Proceedings before
The Honorable James Knoll Gardner
    on May 24, 2012 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 264

       **Testimony of Gary Gregory:**

       Direct Examination  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 266

**Plaintiff's Trial Exhibits:**

    3.    **Fruit and Vegetable Programs
        License No. 20040447
            issued February 19, 2004**  . . . . . . . . . . . . . . . . . . . . . . . . . . 293

    4.    **Unilink, LLC Purchase Order
            dated November 11, 2008** . . . . . . . . . . . . . . . . . . . . . . . . . . 295

<u>Plaintiff's Trial Exhibits</u>, continued:

5.     Unilink, LLC Revised Purchase Order
          dated October 31, 2008 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 297

6.     Email to
       Magda from
       Dale Brunton
       Re:  Unilink Purchase Orders
          dated November 2, 2008  . . . . . . . . . . . . . . . . . . . . . . . . . . 299

7.     Email to
       Magda from
       Dale Brunton
       Re:  Purchase Orders
          dated November 14, 2008 . . . . . . . . . . . . . . . . . . . . . . . . . . 303

8.     Email Correspondence between
       Magda and Dale Brunton
       Re:  Purchase Order
          dated November 15, 2008 . . . . . . . . . . . . . . . . . . . . . . . . . 305

9.     Email to
       Magda from
       Dale Brunton
       Re:  Confirmation
          dated December 4, 2008 . . . . . . . . . . . . . . . . . . . . . . . . . . 307

10.    Unilink, LLC Purchase Order
          dated December 5, 2008 . . . . . . . . . . . . . . . . . . . . . . . . . . 309

23.    Redacted Schedule for
       Withdrawn Claim Amounts and
       Attached Invoices
          various dates . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 311

26.    Plaintiff's First Set of Interrogatories to Defendant
          dated July 15, 2011 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 330

       Defendant's Answers to Plaintiff's First Set of Interrogatories
          dated September 7, 2011 . . . . . . . . . . . . . . . . . . . . . . . . . . 339

**Plaintiff's Trial Exhibits**, continued:

    27.    **Excerpt of Transcript of Deposition of Gary H. Gregory
taken October 25, 2011** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 342

**Defendants' Trial Exhibits**:

    1.    **Checks Paying for Rejected Shipments
various dates** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 348

    4.    **Spreadsheet Accounting for all Payments on
Shipments Delivered by Plaintiff to Unilink, as
Amended by Court Order of June 20, 2012** . . . . . . . . . . . . . . . . . 357

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FOOD TEAM INTERNATIONAL, LTD.,** | : | **CIVIL ACTION** |
| | : | |
| **Plaintiff,** | : | |
| | : | **CASE NO. 5:10-CV-3584-JKG** |
| **v.** | : | **JUDGE GARDNER** |
| | : | |
| **UNILINK, LLC, GARY GREGORY,** | : | |
| **MARC BEHAEGEL, AKBAR** | : | **NOTICE OF APPEAL** |
| **BOUTARABI, MIKE MOORE and** | : | |
| **PENNSYLVANIA FOOD GROUP, INC.** | : | |
| | : | |
| **Defendants.** | : | |

NOTICE is hereby given that Defendants-Appellants Unilink, LLC, Gary Gregory, Marc

Behaegel, and Akbar Boutarabi hereby appeal to the United States Court of Appeals for the Third

Circuit from every part and portion of the Opinion of the United States District Court, Eastern

District of Pennsylvania rendered by Judge James Knoll Gardner on May 18, 2012, Docket Entry

No. 68, from every part and portion of the Order of United States District Court, Eastern District

of Pennsylvania rendered by Judge James Knoll Gardner on May 18, 2012, Docket Entry No. 69,

from every part and portion of the Verdict of the United States District Court, Eastern District of

Pennsylvania rendered by Judge James Knoll Gardner on September 30, 2013, Docket Entry No.

86, from every part and portion of the Adjudication rendered by the United States District Court,

Eastern District of Pennsylvania rendered by Judge James Knoll Gardner on September 30, 2013,

Docket Entry No. 87, and from every part and portion of the Civil Judgment of the United States

District Court, Eastern District of Pennsylvania entered by order of Judge James Knoll Gardner

on October 1, 2013, Docket Entry No. 88.

Dated:     October 30, 2013

**Mark C. H. Mandell** [MM-5708]
Attorney for Defendants-Appellants
42 Herman Thau Road
Annandale, NJ 08801
(908)638-4434

Parties to be Served:

     Spector Gadon & Rosen, P.C.
     Peter N. Kessler
     1635 Market Street, 7th Floor
     Philadelphia, PA 19103

     Keaton Law Firm, P.C.
     Michael J. Keaton, Esq.
     707 Lake Cook Road,  Suite 300
     Deerfield, Illinois 60015

     Attorneys for Plaintiff-Appellee

2

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA
### PHILADELPHIA DIVISION

| | |
|---|---|
| FOOD TEAM INTERNATIONAL, LTD, | ) |
| | ) |
| Plaintiff, | ) CIVIL ACTION |
| | ) |
| v. | ) Case No. 5:10-CV-3584-JKG |
| | ) |
| UNILINK, LLC and GARY GREGORY, | ) |
| MARC BEHAEGAL, AKBAR BOUTARABI, | ) |
| MIKE MOORE and PENNSYLVANIA FOOD | ) |
| GROUP, LLC, each individually, | ) |
| | |
| Defendants. | |

## NOTICE OF CROSS-APPEAL

Food Team International, Ltd. (the "Cross-Appellant"), hereby gives notice, pursuant to FRAP 3(a)(1) and 28 U.S.C. § 1291, of its appeal to the United States Court of Appeals for the Third Circuit from the May 18, 2012 Order [D.E. #69] denying Cross Appellant's motion for summary judgment as to Cross-Appellant's claim for contractual attorneys' fees in connection with its efforts to collect the amounts due on invoices 29CFF04115 and 29CF01017 against defendants Unilink, LLC, Gary Gregory, Marc Behaegal, Akbar Boutarabi, Mike Moore, and Pennsylvania Food Group, LLC (collectively the "Defendants"), and, instead, entering judgment in favor of Defendants and against Cross-Appellant on Cross-Appellant's claim for contractual attorneys' fees.

Cross Appellant also gives notice, pursuant to FRAP 3(a)(1) and 28 U.S.C. § 1291, of its appeal to the United States Court of Appeals for the Third Circuit of the District Court's failure to even consider entering sanctions against Defendants for Defendants' failure to disclose the existence of an insurance policy to satisfy any judgment entered against them until May 22, 2012, the third day of trial. This violated Defendants' duty to disclose such agreement on their F.R.C.P. 26(a) disclosures and at two (2) settlement conferences before the Magistrate Judge.

Date: November 13, 2013

Respectfully submitted,

FOOD TEAM INTERNATIONAL, LTD.

By: /s/ Michael J. Keaton, Esq.
          One of Its Attorneys

Michael J. Keaton, Esq. (Admitted PHV)
KEATON LAW FIRM, P.C.
707 Lake Cook Road, Suite 300
Deerfield, Illinois 60015
Tel:     847/934-6500
Fax:    847/934-6508
Email    keaton@pacatrust.com


Peter Kessler, Esq.
SPECTOR GADON & ROSEN, P.C.
1635 Market Street, 7th Floor
Philadelphia, Pennsylvania 19103
Tel:     215/241-8857
Fax:    215/531-9145


Parties to be served:

Mark C.H. Mandell
42 Herman Thau Road
Annandale, New Jersey 08801
Tel:     908/638-4434
Attorney for Defendants/Appellants-Cross-Appellees

2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FOOD TEAM INTERNATIONAL, LTD, | ) | |
| | ) | Civil Action |
| Plaintiff | ) | No. 10-cv-03584 |
| | ) | |
| vs. | ) | |
| | ) | |
| UNILINK, LLC, | ) | |
| GARY GREGORY, | ) | |
| MARC BEHAEGAL, | ) | |
| AKBAR BOUTARABI, | ) | |
| MIKE MOORE, and | ) | |
| PENNSYLVANIA FOOD GROUP, LLC, | ) | |
| | ) | |
| Defendants | ) | |

\*     \*     \*

APPEARANCES:

>        JOHN C. CREES, ESQUIRE
>        MICHAEL J. KEATON, ESQUIRE
>             On behalf of Plaintiff
>
>        MARK C.H. MANDELL, ESQUIRE
>             On behalf of Defendants

\*     \*     \*

**O P I N I O N**

JAMES KNOLL GARDNER
United States District Judge

**INTRODUCTION**

The matter before the court is Plaintiff's Motion for
Summary Judgment filed December 9, 2011. For the reasons
expressed herein, Plaintiff's Motion for Summary Judgment is
granted in part and denied in part.

<u>Summary of Decision</u>

Specifically, I grant Plaintiff's Motion for Summary Judgment to the extent that plaintiff seeks summary judgment in its favor concerning the unpaid balances due for the produce billed on invoices 29CFF04115 and 29CFF01017 because it is undisputed that the produce billed on those invoices was accepted and that payment for produce billed on those invoices was not tendered to plaintiff.

I further grant Plaintiff's Motion for Summary Judgment to the extent that plaintiff seeks contractual interest at the rate of 1.5% per month on the balances due on invoices 29CFF04115 and 29CFF01017 because the interest provision on those invoices became an enforceable term of the Broccoli and Cauliflower Contracts pursuant to Section 2207 of the Pennsylvania Uniform Commercial Code.

However, I deny Plaintiff's Motion for Summary Judgment to the extent that it seeks contractual attorneys' fees in connection with its efforts to collect the amounts due on invoices 29CFF04115 and 29CFF01017 because the attorneys' fee provision on those invoices did not became an enforceable term of the Broccoli and Cauliflower Contracts pursuant to Section 2207 of the Pennsylvania Uniform Commercial Code.

In addition, I grant Plaintiff's Motion for Summary Judgment to the extent that it seeks summary judgment in its

-2-

favor concerning the unpaid balances due for the produce billed on invoice 29CFF02901 because it is undisputed that the payment tendered to plaintiff directed toward this and other invoices, were insufficient to cover the amount due for produce accepted and billed on invoice 29CFF02901.

In addition, I grant Plaintiff's Motion for Summary Judgement to the extent that plaintiff seeks a declaratory ruling that defendant Unilink accepted, and has a duty to pay for, invoices 28CFF01019, 29CFF04111, 29CFF01008, 29CFF01012, 29CFF01014 and 29CFF01015 and because it is undisputed that plaintiff unloaded, inspected, and diverted the produce billed on those invoices to its cold storage facility before pulling that produce from storage for further inspection and production, thereby accepting that produce.

I enter judgment in favor of plaintiff Food Team International, LTD and against defendants Unilink, LLC; Gary Gregory; Marc Behaegal; and Akbar Boutarabi in the sum of $104,843.37, as follows:

      (A)   in the sum of $44,452.60 for the unpaid balance due for produce billed on invoices 29CFF04115, 29CFF01017 and 29CFF02901; and

      (B)   in the sum of $29,294.10 for contractual interest on the balances due on invoices 29CFF04115 and 29CFF01017;

-3-

7

      (C)   in the sum of $26,115.70 for the unpaid balance

              due for produce billed on invoice 29CFF02901; and

      (D)   in the sum of $4,980.97 for statutory interest on

              the balance due on invoice 29CFF02901.

In addition, I enter judgment in favor of plaintiff Food Team International, LTD and against defendant Unilink, LLC in the sum of $46,608.20 for the unpaid balance due on invoices 29CFF01008 and 29CFF01015.

Finally, I enter judgment in favor of defendants Unilink, LLC; Gary Gregory; Marc Behaegal; Akbar Boutarabi; Mike Moore; and Pennsylvania Food Group, LLC and against plaintiff Food Team International, LTD on plaintiff's claims for contractual attorneys' fees in connection with plaintiff's efforts to collect the amounts due on invoices 29CFF04115 and 29CFF01017.

## JURISDICTION

This court has jurisdiction over the subject matter of plaintiff's federal claims pursuant to the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499e(c)(5),[1] and

---

[1] The PACA provision governing liability to persons injured in violation of the Act states that

> [t]he several district courts of the United States are vested with jurisdiction specifically to entertain (i) actions by trust beneficiaries to enforce payment from the trust, and (ii) actions by the Secretary to prevent and restrain dissipation of the trust.

7 U.S.C. § 499e(5).

28 U.S.C. § 1331. This court has supplemental jurisdiction over plaintiff's state-law claims pursuant to 28 U.S.C. § 1367.

## VENUE

Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to plaintiff's claims occurred within this district and because a substantial part of the property which is the subject of this action is located in this district.

Specifically, the perishable agricultural commodities which are at the center of the parties' dispute were delivered to defendant Unilink, LLC's facility in Rheems, Pennsylvania and were and or are stored in a cold-storage facility in Lancaster, Pennsyl-vania. Both Rheems and Lancaster are within Lancaster County, which is within this judicial district.

## PROCEDURAL HISTORY

Plaintiff initiated this action by filing its Complaint on July 21, 2010 (Document 1). On August 17, 2012 defendants filed an Answer to Complaint with Affirmative Defenses and Counterclaims (Document 4). On September 15, 2012, pursuant to a court-approved stipulation expanding plaintiff's time to respond to defendants' counterclaims, plaintiff filed its Answer and Affirmative Defenses to Counterclaims (Document 12).

-5-

9

On February 18, 2011 I conducted a Rule 16 status conference by telephone with counsel for the parties. At that conference, I attached the non-jury trial of this matter for a two-week trial term commencing January 17, 2012, and set other appropriate pretrial deadlines.[2]

My February 18, 2011 Order established August 31, 2011 as the deadline for either party to file dispositive motions, including motions for summary judgment, and set October 26, 2011 as the date for oral argument on any dispositive motion filed.

By Order dated August 24, 2011 and filed August 25, 2011 (Document 34), I granted plaintiff's uncontested motion to extend discovery and accordingly modified in part my February 18, 2011 Rule 16 Status Conference Order. Specifically, I extended the discovery deadline until October 17, 2011, established December 9, 2011 as the modified deadline for any dispositive motions, and re-scheduled oral argument on dispositive motions for February 3, 2012. Finally, I re-attached the non-jury trial of this matter for my two-week trial term commencing May 14, 2012.

Plaintiff's Motion for Summary Judgment was filed December 9, 2011 (Document 38). Defendants' Opposition to Plaintiff's Motion for Partial Summary Judgment was filed

---

[2]      The trial date and pretrial deadlines were memorialized in my Rule 16 Status Conference Order dated February 18, 2011 and filed February 24, 2012 (Document 22).

-6-

January 3, 2012 (Document 45).  On February 3, 2012 Plaintiff's Reply to Defendants' Response to Motion for Summary Judgment (Document 52) and Defendants' Surreply Memorandum of Law in Opposition to Plaintiff's Motion for Partial Summary Judgment (Document 54) were filed.

Oral argument was conducted on Plaintiff's Motion for Summary Judgment on February 3, 2012.  At the conclusion of oral argument, I took the matter under advisement.  Hence this Opinion.

### STANDARD OF REVIEW

In considering a motion for summary judgment, the court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-2510, 91 L.Ed.2d 202, 211 (1986); Federal Home Loan Mortgage Corporation v. Scottsdale Insurance Company, 316 F.3d 431, 443 (3d Cir. 2003).

Only facts that may affect the outcome of a case are "material".  Moreover, all reasonable inferences from the record are drawn in favor of the non-movant.  Anderson, 477 U.S. at 255, 106 S.Ct. at 2513, 91 L.Ed.2d at 216.

-7-

Although the movant has the initial burden of demonstrating the absence of genuine issues of material fact, the non-movant must then establish the existence of each element on which it bears the burden of proof.  See <u>Watson v. Eastman Kodak Company</u>, 235 F.3d 851, 857-858 (3d Cir. 2000).

**FACTS**

Based upon the pleadings, record papers, exhibits, and the parties' statements of undisputed material facts, the pertinent undisputed facts for purposes of the motion for summary judgment are as follows.

Plaintiff Food Team International, LTD ("Food Team") and defendant Unilink, LLC ("Unilink") each held a valid United States Department of Agriculture Perishable Agricultural Commodities Act ("PACA") license from January 1, 2008 through January 1, 2010.

<u>Broccoli Contract</u>

On October 29, 2008 defendant Unilink submitted purchase order number 0006122 to plaintiff Food Team for 999,990 pounds of broccoli florets from Food Team at the contract price of 53.5 cents per pound.  On November 14, 2008 Food Team sent an email to Unilink seeking confirmation that purchase order number 0006122 should have ordered 1,100,000 pounds of brocolli florets, rather than the 999,990 pounds specified in the original purchase order.  On November 15, 2008 Unilink emailed the following

-8-

response: "Confirmed." Uninlink purchase order number 0006122 was properly issued from Unilink to Food Team.

Unilink's broccoli purchase order number 0006122 included the following terms in addition to the quantity term confirmed by email: "GRADE A", "28 CONTAINERS", "PRODUCT PACKED IN TOTES OR CARTONS", "PRICE $0.535/LB DDP RHEEMS" "SHIPPING SCHEDULE STARTING IN JANUARY 2009: THROUGH JUNE 2009 - 1 CON-TAINER PER WEEK". Unilink's November 15, 2012 email further confirmed that the shipping schedule would continued "till wk July 6, 2009 (a little longer than June 30 date at rate of 1 per week)" as specified in the original purchase order 0006122.

<u>Cauliflower Contract</u>

On October 29, 2008 Unilink also submitted purchase order number 0006123 for 450,000 pounds of cauliflower from Food Team at the contract price of 42 cents per pound. On November 14, 2008 Food Team sent an email to Unilink seeking confirmation that purchase order number 0006122 should have ordered 500,000 pounds of cauliflower, rather than the 450,000 pounds specified in the original purchase order. On November 15, 2008 Unilink emailed the following response: "Confirmed." Uninlink purchase order number 0006123 was properly issued from Unilink to Food Team.

Unilink's cauliflower purchase order number 0006123 included the following terms: "GRADE A", "10 P/CT", "PRODUCT

-9-

13

PACKED IN TOTES OR CARTONS", "PRICE $0.42/LB DDP RHEEMS"
"SHIPPING SCHEDULE STARTING MARCH 2009 THRU AUGUST 2009 –
1 CONTAINER EVERY 3 WEEKS".

### Interest and Attorneys' Fees

Neither Unilink's purchase orders 0006122 or 0006123,
nor the November 14-15, 2008 confirmatory emails exchanged by
Food Team and Unilink include provisions for interest or
attorneys' fees.  The first time that attorneys' fees and
interest on past due invoices appear in any correspondence of
record between the parties is on invoices 29CFF01017 (broccoli)
and 29CFF04115 (cauliflower).

On June 3, 2009 Food Team received an email from
Unilink which directed Food Team to "[p]lease stop all
shipments".[3]

The first invoice containing interest and attorneys'
fee provisions is invoice 29CFF04115 (cauliflower). Invoice
29CFF04115 is dated June 5, 2009 -- three months after shipments
began under the Cauliflower Contract and nearly seven months
after the Cauliflower Contract was formed.  The second invoice
containing the attorneys' fees and interest provisions is invoice
29CFF01017 (broccoli), which is dated June 9, 2009, approximately
six months after shipments began under the Broccoli Contract and
nearly seven months after the Broccoli Contract was formed.

---

[3]     Exhibit E to Affidavit of Dale A. Brunton, which affidavit is
Exhibit B to Plaintiff's Motion for Summary Judgment.

-10-

On June 23, 2009 Food Team received another email from Unilink cancelling the balance of the Broccoli Contract and the Cauliflower Contract. Specifically, defendant Gary Gregory, President of Unilink, sent an email to Dale Brunton, a Sales Agent for Food Team, which stated, in pertinent part: "Please cancel the balance of our contracts. This action is taken as a result of numerous quality problems existing on your deliveries."[4]

<u>Delivery of Produce</u>

Food Team delivered loads of produce corresponding to the following invoices to Unilink: 29CFF01008 (broccoli), 29CFF01015 (broccoli), 29CFF04111 (cauliflower), 28CFF01019 (broccoli), 29CFF01012 (broccoli),[5] 29CFF01014 (broccoli),

---

[4]     Exhibit I to Declaration of Sue A. Haar, with Exhibits, in Opposition to Plaintiff's Motion for Summary Judgment.

[5]     Unilink contends that it received and paid in full for the loads of broccoli identified in invoices 29CFF01012 and 29CFF01014. However, Unilink contends that it then rejected part of the load for invoice 29CFF01012 and all of the load for invoice 29CFF01014 because of the presence of 3/4-inch worms discovered when those loads were pulled for production. Unilink claimed a credit of $3,768.54 on the load for invoice 29CFF01012 and a credit of $23,133.40 on the load for invoice 29CFF01014. Unilink claimed these credits on Unilink Check No. 13698. Unilink Check No. 13698 was drafted in the amount of $44,749.10. Unilink contends that the $44,749.10 Check No. 13698 paid in full the amount owed on the produce on invoices 29CFF010242 (PACA), 29CFF02901 (PACA), 29CFF04113 (PACA), and 29CFF04111 (non-PACA, non-fee).

        Food Team contends that Unilink is not entitled to take any credits and that Food Team properly applied the $44,749.10 from Check No. 13698 to the invoices that Unilink specified -- beginning with the oldest invoice, invoice 29CFF04111. However, without the $26,901.94 of credits claimed ($23,133.40 on invoice 29CFF01014, plus $3,768.54 on invoice 29CFF01012) and with the funds being applied to the Unilink-specified invoices from the oldest to the newest invoice, Unilink is left owing $26,115.70 on invoice 29CFF02901, which contained the PACA language (after application of

(<u>Footnote 5 continued</u>):

-11-

15

29CFF010242 (broccoli), 29CFF01016 (broccoli), 29CFF04113
(cauliflower), 29CFF02901 (red pepper strips), 29CFF01017
(broccoli), and 29CFF04115 (cauliflower).

"PACA-With-Fees" Invoices[6]

Unilink received and accepted the produce referred to
in invoice 29CFF01017.  Unilink then placed that produce in its
cold storage.  Unilink did not reject the produce referred to in
invoice 29CFF01017.  Unilink has not paid Food Team on invoice
29CFF01017, but contends that it offered payment on invoice
29CFF01017 on August 28, 2009 and that Food Team rejected the
payment.

Unilink received and accepted the produce referred to
in invoice 29CFF04115.  Unilink then placed that produce in its
cold storage.  Unilink did not reject the produce referred to in
invoice 29CFF01017.  Unilink has not paid Food Team on invoice

---

(Continuation of footnote 5):

the $214.70 remaining from Unilink Check No. 13698's $44,749.10 after that
$44,749.10 was first applied to the three older invoices specified by Unilink
-- invoices 29CFF04111, 29CFF010242, 29CFF04113).

[6]    These invoices contain the following language at the bottom of
each invoice:

> In the event that any action or proceeding is commenced to enforce
> the terms of this transaction or to enforce the seller's PACA
> trust rights, the buyer agrees to pay all costs of enforcement,
> including all attorneys' fees, together with any costs and
> expenses, as additional sums owed in connection with this
> transaction.  Finance charges will accrue on any past-due balances
> at a rate of 1 ½ % per month (18% per annum) from the date each
> invoice becomes past due, or the maximum rate of interest
> allowable by law, and will be computed daily and compounded.

(See, e.g., Invoice 29CFFFF04115, Plaintiff's Motion for Summary Judgment,
Exhibit L).

-12-

29CFF01017, but contends that it offered payment on invoice 29CFF01017 on August 28, 2009 and that Food Team rejected the payment.

<u>Inspections</u>

Food Team engaged two different private firms to conduct inspections of samples of produce which was allegedly supplied by Food Team and which Unilink was storing in order to evaluate Unilink's allegations that the produce delivered by Food Team was defective, and/or contained foreign objects or worms. Neither of the inspections concluded that the produce was defective or found evidence of freezer burn, worms or other foreign objects.[7]

<u>Repudiation/Cancellation of Yet-to-be-Delivered Produce</u>

Food Team delivered, and Unilink took delivery of, the first 542,800 pounds of brocolli florets shipped under the Broccoli Contract. Unilink refused to take delivery of the remaining 557,200 of the Broccoli Contract's 1,100,000 pounds of produce.

Food Team sold the remaining 557,200 pounds of broccoli to five different wholesale produce buyers at prices which ranged from 48 cents per pound (below the contract price) to 55 cents per pound (above the contract price). The gross return on Food

---

[7] Unilink challenges the credibility of these inspections conducted at Food Team's request. However, Unilink has not offered inspection or other reports indicating that the produce delivered by Food Team was contaminated or defective.

-13-

Team's resale of the remaining 557,200 pounds of broccoli was $314,450. The value of 557,200 pounds of broccoli at the Broccoli Contract price of $.535 per pound is $298,102. In other words, the gross return realized by Food Team on its resale of the 557,200 pounds of broccoli was $16,348 <u>more</u> than the value of that amount of broccoli at the Broccoli Contract price. However, Food Team asserts that it incurred various costs in reselling the 557,200 pounds of broccoli which total $33,162.

Food Team delivered, and Unilink took delivery of, the first 202,360 pounds of cauliflower shipped under the Cauliflower Contract. Unilink refused to take delivery of the remaining 297,640 of the Cauliflower Contract's 500,000 pounds of produce.

Food Team sold the remaining 297,640 pounds of cauliflower to four different wholesale produce buyers at prices which ranged from 30 cents per pound to 41 cents per pound (all below the contract price). The gross return on Food Team's resale of the remaining 297,640 pounds of cauliflower was $114,432. The value of 297,640 pounds of broccoli at the Broccoli Contract price of $.42 per pound is $125,008.80. In other words, the gross return realized by Food Team on its resale of the 297,640 pounds of cauliflower was $10,576.80 <u>less</u> than the value of that amount of cauliflower at the Cauliflower Contract price. In addition, Food Team asserts that it incurred various costs in reselling the 297,640 pounds of cauliflower.

-14-

18

## APPLICABLE LAW

United Nations Convention for the International Sale of Goods

There is a dispute between the parties concerning what substantive law governs their dispute.

Food Team contends that Pennsylvania and New Jersey have both adopted the same language from the Uniform Commercial Code ("UCC") at issue here.[8]  Food Team also contends that to the extent there are any relevant differences between the language adopted by Pennsylvania and New Jersey, the New Jersey UCC applies because Unilink "reached into New Jersey to purchase these goods from a New Jersey seller", namely Food Team.

Defendants argue that Food Team's motion for summary judgment should be denied because the motion relies on the UCC and the UCC is inapplicable to this action because it is supplanted by the United Nations Convention for the International Sale of Goods ("CISG").  Specifically, on the final full page of their memorandum and after responding in opposition to Food Team's UCC § 2-207 battle-of-the-forms argument, defendants assert that the CISG supplants UCC Article 2 and governs all issues under the contracts for the sale of goods between Unilink and Food Team's offices and operations in China -- specifically

---

[8]     Plaintiff's Memorandum at page 2, citing N.J. Stat. § 12A:2-706 and 13 Pa.C.S.A. § 2706.

its operations in the Hong Kong special administrative region ("SAR").[9]

Defendants' Memorandum states that the United States and China are both signatories and "contracting states" under the CISG, which supplants and displaces Article 2 of the UCC where it applies.[10] The sole authority cited by Unilink in support of its assertion that the CISG applies to this case is <u>Electrocraft Arkansas, Inc. v. Super Electric Motors, LTD</u>, 2010 WL 3307461 (E.D.Ark. August 19, 2010).[11]

Defendants provide no citation to, or discussion of, the CISG itself in their memorandum. Moreover, as Food Team notes in its Reply Brief, <u>Electrocraft</u> is readily distinguishable from this case. Specifically, in <u>Electrocraft</u>, both plaintiff Electrocraft and defendant Super Electric asserted claims under the CISG. In short, the applicability of the CISG to the parties' dispute in that case was not contested. More importantly, Super Electric was formed under the laws of Hong Kong and its manufacturing facilities were located in Shenzhen, China. <u>Electrocraft</u>, 2010 WL 3307461, at *1. Unlike Food Team here, Super Electric was not a United States domestic corporation

---

[9]    Defendants' Memorandum at page 9.

[10]    <u>Id.</u>

[11]    <u>Id.</u>

-16-

formed under the laws of one its States -- New Jersey -- with its
principal place of business in that state.

Defendants' assertion that the CISG governs these
contracts rests on the facts that the produce was shipped from
China and that Unilink negotiated the contracts with Mr. Dale
Burnton, a Food Team agent or employee based in Hong Kong SAR.
However, defendants provide no explanation of how those facts
mandate the application of the CISG and the displacement of the
PACA and UCC Article 2 in this dispute between Food Team,
Unilink, and the individual defendants.

While Unilink cites Electrocraft for the proposition
that the CISG governs (and the underlying proposition that Hong
Kong SAR is a "contracting state" for purposes of the CISG),
defendants note, but do not address, the split of authority which
exists regarding whether Hong Kong SAR is a contracting state to
which the CISG applies.  Compare Electrocraft Arkansas, Inc. v.
Super Electric Motors, Ltd., 2009 WL 5181854, at *3 (E.D.Ark.
December 23, 2009)(holding that Hong Kong is a contracting state
to which the CISG applies), with Innotex Precision Limited v.
Horei Image Products, Inc., 679 F.Supp.2d 1356, 1358-1359
(N.D.Ga. 2009)(holding that Honk Kong is not a contracting state
to which the CISG applies).

Finally, I note that Defendants' Surreply makes no
mention of the CISG, much less responds in opposition to Food

-17-

21

Team's assertion that the CISG is inapplicable here despite Food Team's argument in its reply brief that defendants failed to demonstrate that, or explain why, the CISG governs this matter.[12]

Ultimately, defendants' argument that Plaintiff's Motion for Summary Judgment must be denied because the CISG, and not the UCC, governs the contracts at issue fails for the reasons expressed above.

<u>Uniform Commercial Code</u>

Plaintiff Food Team contends that the Uniform Commercial Code governs these contracts and, to the extent that there are any material differences between the UCC as adopted and interpreted by the State of New Jersey and the Commonwealth of Pennsylvania, the New Jersey UCC should govern the transactions. Defendants argument implies that the Pennsylvania UCC governs.[13]

Federal district courts sitting in diversity or exercising supplemental jurisdiction over a common law claim must apply the choice of law rules of the forum state. <u>Hopkins v. New Day Financial</u>, 643 F.Supp.2d 704, 714 (E.D.Pa. 2009)(Slomsky, J.) (<u>citing</u> <u>Klaxon Co. v. Stentor Electric Mfg. Co.</u>, 313 U.S. 487, 497, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) and <u>Berg Chilling Systems, Inc. v. Hull Corp.</u>, 435 F.3d 455, 462 (3d Cir. 2006)).

---

[12] <u>See</u> Defendants' Surreply at pages 1-4.

[13] Defendants' Memorandum at page 8.

Accordingly, I will apply Pennsylvania choice of law rules to
this case.

In <u>Griffith v. United Air Lines, Inc.</u>, 416 Pa. 1,
203 A.2d 796 (1964), the Supreme Court of Pennsylvania adopted
the approach outlined in the Restatement of Conflict of Laws,
Second to choice-of-law questions.  <u>Id.</u> 416 Pa. at 15,
203 A.2d at 802; <u>see</u> <u>Ario v. Underwriting Members of Lloyd's of
London Syndicates 33, 205 and 506</u>, 996 A.2d 588, 595 (Pa.Commw.
2010).

Regarding contracts, Section 188(1) of the Restatement
of Conflicts of Law, Second provides that "[t]he rights and
duties of the parties with respect to an issue in contract are
determined by the local law of the state which, with
respect to that issue, has the most significant relationship to
the transaction and the parties...."  <u>Ario</u>, 996 A.2d at 595.

Where, as here, there is no choice-of-law provision in
the parties' agreement, Pennsylvania courts look to the following
contacts in order to evaluate the general choice-of-law
principles outlined in Section 6 of the Restatement:[14]

---

[14]    Section 6 provides the following choice-of-law principles:

(1) A court, subject to constitutional restrictions, will
follow a statutory directive of its own state on choice of
law.

(2) When there is no such directive, the factors relevant to
the choice of the applicable rule of law include

(<u>Footnote 14 continued</u>):

-19-

(a)  the place of contracting [here, Pennsylvania and
     Hong Kong],

(b)  the place of negotiation of the contract [here,
     Pennsylvania and Hong Kong],

(c)  the place of performance [here, Pennsylvania],

(d)  the location of the subject matter of the contract
     [here, Pennsylvania], and

(e)  the domicil[e], residence, nationality, place of
     incorporation, and place of business of the
     parties [here Pennsylvania, New Jersey, and Hong
     Kong].

Ario, 996 A.2d at 595.

Food Team's sole argument for the application of the
New Jersey UCC is this: Unilink "reached into New Jersey to

---

(Continuation of footnote 14):

         (a) the needs of the interstate and international
         systems,

         (b) the relevant policies of the forum,

         (c) the relevant policies of other interested states
         and the relative interests of those states in the
         determination of the particular issue,

         (d) the protection of justified expectations,

         (e) the basic policies underlying the particular field
         of law,

         (f) certainty, predictability and uniformity of
         result, and

         (g) ease in the determination and application of the
         law to be applied.

Restatement (Second) of Conflicts of Law § 6 (1971).

-20-

purchase these goods from a New Jersey seller so Plaintiff submits that New Jersey's UCC provisions should control."[15]

Plaintiff's argument for the application of the New Jersey UCC to determine the rights and obligations of Unilink and Food Team under the Broccoli and Cauliflower Contracts is unpersuasive in light of the relevant factors set forth in the Restatement of Conflicts of Law, Second and adopted by the courts of Pennsylvania.

Specifically, performance under the Contracts (delivery of the produce to Unilink) occurred, and was to occur, in Pennsylvania. Moreover, the produce which is the subject matter of this action is presently being held at a cold-storage facility in Pennsylvania. Indeed, although Food Team is a New Jersey corporation with its primary office location in New Jersey, Food Team's Sales Agent Dale Brunton -- who actually negotiated the Brocolli and Cauliflower Contracts with Unilink's President Gary Gregory -- is based in Hong Kong.

The quality and quantity of the contacts relevant to the Broccoli and Cauliflower Contracts between Food Team and Unilink support application of the Pennsylvania UCC rather than the New Jersey UCC to determine the terms of those Contracts and the rights and obligations thereunder.

---

[15]     Plaintiff's Memorandum at page 2 n.1.

-21-

<u>Perishable Agricultural Commodities Act</u>

The Perishable Agricultural Commodities Act was first enacted in 1930 "to deter unfair business practices and promote financial responsibility in the perishable agricultural goods market." <u>Weis-Buy Services, Inc. v. Paglia</u>, 411 F.3d 415, 419 (3d Cir. 2005); <u>see also</u> <u>Bear Mountain Orchards, Inc. v. Mich-Kim, Inc.</u>, 623 F.3d 163, 169-175 (3d Cir. 2010).

The PACA provides that "no person shall at any time carry on the business of a commission merchant, dealer, or broker without a license valid and effective at such time." <u>Bear Mountain Orchards</u>, 623 F.3d at 166 (quoting 7 U.S.C. § 499c(a).[16]

The PACA was amended in 1984 "to allow for a non-segregated floating trust for the protection of producers and growers." <u>Weis-Buy</u>, 411 F.3d at 420. The PACA trust provision provides that

> [p]erishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such trans-

---

[16]    It is undisputed that Food Team and Unilink held valid PACA licenses issued by the United States Department of Agriculture at all times relevant to this matter. (Plaintiff's Statement of Undisputed Material Facts at ¶¶ 4-5; Defendants' Response to Statement of Material Facts at ¶ 4.)

-22-

actions has been received by such unpaid
suppliers, sellers, or agents.

7 U.S.C. § 499e(c)(2).

The United States Court of Appeals for the Third
Circuit has explained that the PACA trust provision "seeks to
protect sellers of fresh fruits and vegetables who were unsecured
creditors and receive[d] little protection in any suit for
recovery of damages where a buyer ha[d] failed to make payment as
required by the contract." Bear Mountain, 623 F.3d at 167
(internal quotations omitted and alteration in original).

In short, produce purchasers must hold sufficient PACA
trust assets (whether in the form of the produce itself or the
proceeds from its sale) in trust to pay all suppliers. Id.
However, in order to preserve its benefits under the PACA trust,
an unpaid supplier must give the purchaser notice of its intent
to preserve its PACA trust benefits. Id.[17]

The Third Circuit distilled the "theme of the PACA
trust" to the following:

---

[17] Food Team included the following PACA-trust-notice provision in
certain of its invoices submitted to Unilink:

> The perishable agricultural commodities listed on this
> invoice are sold subject to the statutory trust authorized
> by Section 5(c) of the Perishable Agricultural Commodities
> Act, 1930 (7 U.S.C. [§] 499e(c)). The seller of these
> commodities retains a trust claim over these commodities,
> all inventories of food or other products derived from these
> commodities, and any receivable or proceeds from the sale of
> these commodities until full payment is received.

Defendants do not dispute that the PACA trust notice language appeared on
invoices 29CFF01017, 29CFF04115, 29CFF010242, 29CFF01016, 29CFF04113, and
29CFF02901.

-23-

> [T]o benefit producers of perishable agricultural
> items sold nationally to consumers, PACA places
> duties on those entrusted with such items for sale
> -- the licensed sellers, or "middlemen" between
> producers and consumers -- to prefer the producers
> over others.  In the event of a breach of those
> duties, "liability attaches first to the licensed
> seller of perishable agricultural commodities.  If
> the seller's assets are insufficient to satisfy
> the liability, others may be found secondarily
> liable...."

Bear Mountain, 623 F.3d at 167 (quoting Shepard v. K.B. Fruit &

Vegetable, Inc., 868 F.Supp. 703, 706 (E.D.Pa. 1994), and citing

Golman-Hayden Co. v. Fresh Source Produce Inc., 217 F.3d 348, 351

(5th Cir. 2000); Sunkist Growers, Inc. v. Fisher, 104 F.3d 280,

283 (9th Cir. 1997)).

### Secondary Liability Under Perishable

### Agricultural Commodities Act

While a plaintiff-seller pursues primary liability

against a PACA-licensed buyer-defendant (typically, as with

Unilink here, a business entity), a seller-plaintiff may seek to

recover the balance of its PACA trust claims against parties who

may be found secondarily or individually liable to the PACA

trust beneficiary.  Bear Mountain, 623 F.3d at 167-168, 170-172;

Weis-Buy, 411 F.3d at 418-421.

When the Third Circuit Court of Appeals first took up

the issue of individual secondary liability and the PACA trust

provision in Weis-Buy, the Court stated that "individual officers

and shareholders, in certain circumstances, may be held

-24-

28

individually liable for breaching their fiduciary duties under PACA." <u>Weis-Buy</u>, 411 F.3d at 421.  However, as the Third Circuit later acknowledged in <u>Bear Mountain</u>, it "did not specify what those 'certain circumstances' might be."  623 F.3d at 170 (quoting <u>Weis-Buy</u>, 411 F.3d at 421).

   In <u>Bear Mountain</u>, the Third Circuit explained that the proper test for ascribing individual liability for violation of the PACA trust requires that the court "take into account" the formal position (sole shareholder, President, Chief Executive Officer, or Chairman of the Board, for example) of the individual defendant, "but *relies primarily on context*". 623 F.3d at 172 (emphasis added).  The proper test

> calls on courts to: 1) determine whether an
> individual holds a position that suggests a
> possible fiduciary duty to preserve the PACA trust
> assets (e.g., officer, director, and/or
> controlling shareholder); and 2) assess whether
> that individual's involvement with the corporation
> establishes that [he or] she was *actually* able to
> control the PACA trust assets at issue.  The
> ability to control is core."

<u>Bear Mountain</u>, 623 F.3d at 172 (emphasis in original).

## **DISCUSSION**

### PACA-With-Fees Invoices

   In Plaintiff's Motion for Summary Judgment, Food Team seeks a judgment in its favor and "against all Defendants for

-25-

certain invoices,[18] plus breach damages and contractual attorneys' fees, under the [PACA]".  Plaintiff's Reply clarifies that it seeks summary judgment with respect to three invoices which contained PACA trust preservation language: invoices 29CFF04155 and 29CFF01017 (which also contain a provision for attorneys' fees and interest on past due invoices), and invoice 29CFF02901 (which does not contain attorneys' fees and interest provision).

Concerning the principal amounts due on invoices 29CFF04155 and 29CFF01017, Unilink admits that it received and accepted the produce referred to; it placed the produce in cold storage[19]; both invoices contained PACA-trust-preservation

---

[18]    There are six invoices at the center of plaintiff's PACA trust claims: invoices 29CFF01017 (PACA w/ fees), 29CFF04115 (PACA w/ fees), 29CFF010242 (PACA), 29CFF01016 (PACA), 29CFF04113 (PACA), and 29CFF02901 (PACA).  (See Plaintiff's Memorandum at pages 3 and 6.)

Plaintiff contends that only one of the four PACA-only invoices remains unpaid.  Specifically, Food Team's position is that invoices 29CFF010242 (PACA), 29CFF01016 (PACA), and 29CFF04113 (PACA) have been paid in full.  However, Food Team contends that Unilink has paid only $214.70 of the $26,330.40 amount owed on invoice 29CFF02901, leaving $26,115.70 outstanding and unpaid on that invoice, which contained the PACA trust preservation language. (See Plaintiff's Motion for Summary Judgment, Amended Exhibit D.)

[19]    Because Unilink accepted the cauliflower on invoice 29CFF04115 and the broccoli on invoice 29CFF01017, it is liable to Food Team for the Broccoli Contract price for the accepted broccoli and the Cauliflower Contract price for the accepted cauliflower, less damages flowing from breach by Food Team of the Broccoli and/or Cauliflower Contract.  Lionheart Group, Inc. v. Sy Katz Produce, Inc., 59 Agric.Dec. 449, 459 (U.S.D.A. 2000); J&J Produce Co. v. Weis-Buy Services, Inc., 58 Agric.Dec. 1095, 1101 (U.S.D.A. 1999).

Here, Unilink has asserted a counterclaim for breach of Food Team's Contracts with, and warranties to, Unilink; but the counterclaim does not specify which invoices or shipments represent the allegedly-defective produce.  Moreover, in its response to Food Team's motion for summary judgement, Unilink admits that it accepted the produce identified in invoices

(Footnote 19 continued):

-26-

language; and it has not remitted payment to Food Team for the produce identified in invoices 29CFF04155 and 29CFF01017. Accordingly, Food Team is entitled to summary judgment on its PACA trust claims concerning the principal amounts on invoices 29CFF04155 and 29CFF01017.

Next, I address Food Team's claim that it is entitled to recover attorneys' fees and interest pursuant to the clause provided in a text box at the bottom of invoices 29CFF04155 and 29CFF01017 which did not appear on the Unilink purchase orders 0006122 or 0006123 -- the Broccoli Contract and Cauliflower Contracts, respectively. As discussed above, the Uniform Commercial Code as adopted by the Pennsylvania legislature and interpreted by the Pennsylvania courts -- 13 P.S. § 2207 in particular -- determines the rights and obligations of Food Team and Unilink under the Broccoli and Cauliflower Contracts.

Food Team contends that the attorneys' fees and interest provisions which it introduced on invoices 29CFF01017 and 29CFF04115 became terms of the agreements between Food Team

---

(Continuation of footnote 19):

29CFF04115 and 29CFF01017 and never attempted to reject the produce on those invoices. Accordingly, it is clear that invoices 29CFF04115 and 29CFF01017 are not part of Unilink's counterclaim for breach of contract and warranties and, thus, damages for breach of contract relating to the produce on invoices 29CFF04115 and 29CFF01017 would not reduce the amount owed by Unilink to Food Team for those invoices.

and Unilink pursuant to U.C.C. § 2-207.[20]  Food Team is not seeking statutory attorneys' fees and interest but rather seeking the fees and interests as "sums owing in connection with" invoices 29CFF01017 and 29CFF04115.[21]

Defendants contend that Food Team is not entitled to recover attorneys' fees or interest in this litigation. Specifically, Defendants contend that "the contracts negotiated between Dale Brunton and Gary Gregory in October and November 2008 contained all the terms agreed upon, but no provision for either interest on past due accounts or the recovery of attorney's fees by either party in the event of a litigation was raised by Plaintiff" until "the beginning of June [2009] after disputes had arisen" between Food Team and Unilink concerning the produce supplied.[22]

Where terms for attorney fees and interest are part of the contract between the parties, the fees and interest are recoverable as "sums owing in connection with such transactions"

---

[20]    Food Team's battle-of-the-forms argument is as follows: (1) Food Team and Unilink are merchants under U.C.C. § 2-204; (2) no timely objection was made to Food Team's inclusion of the attorneys' fees and interest provision included on invoices 29CFF01017 and 29CFF04115; (3) the attorneys' fees and interest term is a standard seller's term and was prominently printed on the face of Food Team's invoices 29CFF01017 and 29CFF04115 ; and (4) the the attorneys' fees and interest term is "within the range of trade practice" and, therefore, cannot be reasonable grounds upon which Unilink could claim surprise to support a showing that the term was a material alteration to the terms of the agreements between Food Team and Unilink.  (Plaintiff's Memorandum at pages 5-6.)

[21]    Plaintiff's Memorandum at page 5.

[22]    Defendants' Memorandum at page 7.

under PACA. <u>Weis-Buy Services, Inc. v. Paglia</u>,
307 F.Supp.2d 682, 694-695 (W.D.Pa. 2004), <u>rev'd on other grounds</u>
411 F.3d 515 (3d Cir. 2005); <u>E. Armata, Inc. v. Platinum Funding</u>
<u>Corp.</u>, 887 F.Supp. 590, 594-595 (S.D.N.Y. 1995); <u>Morris Okun,</u>
<u>Inc. v. Harry Zimmerman, Inc.</u>, 814 F.Supp. 346, 351 (S.D.N.Y.
1993). Accordingly, the question is whether or not the
attorneys' fees and interest provision became part of the
Agreement between Food Team and Unilink.

     Where, as here, an agreement concerns the sale of goods
for more than $500.00 and is between merchants, and where
additional terms are provided on a seller's invoice sent in
response to a buyer's purchase order, Section 2-207 of the
Uniform Commercial Code governs the effect of those additional
terms. As the Third Circuit Court of Appeals has stated,
"section 2207 applies to the terms contained on an invoice
accompanying or following the delivery of the goods". <u>Altronics</u>
<u>of Bethlehem, Inc. v. Repco, Inc.</u>, 957 F.3d 1102, 1107 (3d Cir.
1990)(citing <u>Herzog Oil Field Services, Inc. v. Otto Torpedo</u>
<u>Company</u>, 391 Pa.Super. 133, 138, 570 A.2d 549, 551 (Pa.Super.Ct.
1990)).

     Section 2207 governs additional terms in an acceptance
or confirmation and provides, in pertinent part:

       (a) General rule.--A definite and seasonable
       expression of acceptance or a written confirmation
       which is sent within a reasonable time operates as
       an acceptance even though it states terms

additional to or different from those offered or
agreed upon, unless acceptance is expressly made
conditional on assent to the additional or
different terms.

(b) Effect on contract.--The additional terms are
to be construed as proposals for addition to the
contract. Between merchants such terms become part
of the contract unless:

> (1) the offer expressly limits acceptance to
> the terms of the offer;

> (2) they *materially alter* it; or

> (3) notification of objection to them has
> already been given or is given within a
> reasonable time after notice of them is
> received.

13 P.S. § 2207 (emphasis added).

Defendants contend that the attorneys' fees and
interest terms, which were added for the first time on Food
Team's invoices 29CFF04155 and 29CFF01017, did not become an
enforceable additional term of the Broccoli Contract or the
Cauliflower Contract because those additional terms materially
alter the Contracts.[23]

Food Team contends that the attorneys' fees and
interest provisions are enforceable because Unilink's President,

---

[23]    Defendants' Memorandum at page 8; Defendants' Surreply at page 3.

defendant Gary Gregory, allegedly[24] stated that he was not surprised by any of the terms of Food Team's invoices.[25]

In support of its contention that it is entitled to attorneys' fees and interest on invoices 29CFF04155 and 29CFF01017, Food Team cites various cases where contractual attorneys' fees and interest provisions were included in a seller-plaintiff's PACA trust judgment as "sums owing in connection with" a perishable agricultural commodities transaction.[26]

However, review of these cases reveals that they support a proposition which defendants do not dispute -- namely, that where a seller succeeds on a PACA trust claim against a buyer and the contract between the buyer and seller provides a term for attorneys' fees and interest, the fees and interest are part of PACA trust claim as part of the sum owing in connection with the perishable agricultural commodities contract.

---

[24]    Food Team cites the deposition of defendant Gary Gregory, (see Plaintiff's Reply at page 6), but no such deposition was submitted as an exhibit to Plaintiff's Motion for Summary Judgment or to Plaintiff's Reply.

[25]    Plaintiff's Memorandum at pages 4-6; Plaintiff's Reply at page 6.

[26]    Plaintiff's Memorandum at page 5 (citing, among others, Middle Mountain Land and Produce, Inc. v. Sound Commodities, Inc., 307 F.3d 1220, 1223 (9th Cir. 2002); Morris Okun, Inc. v. Harry Zimmerman, Inc., 814 F.Supp. 346, 351 (S.D.N.Y. 1993)); Plaintiff's Reply at pages 7-9 (citing Middle Mountain, supra; Country Best v. Christopher Ranch, LLC, 361 F.3d 629, 633 (11th Cir. 2004); Cooseman's Specialties, Inc. v. Gargiulo, 485 F.3d 701, 723 (7th Cir. 2007); Movsovitz & Sons of Florida, Inc. v. Axel Gonzalez, Inc., 367 F.Supp.2d 207, 215 (D.P.R. 2005)).

-31-

For example, in <u>Middle Mountain</u>, the United States Court of Appeals for the Ninth Circuit explicitly declined to decide whether the attorneys' fee provision at issue there was valid and simply held that if the attorneys' fee provision was a valid term of the contract it would be a sum owing in connection with the commodities. 307 F.3d at 1222 n.3, 1224-1225; <u>see also</u> <u>Coosemans</u>, 485 F.3d at 708-709; <u>Country Best</u>, 361 F.3d at 633; <u>Movsovitz & Sons</u>, 367 F.Supp.2d at 215-216. Indeed, the Opinions cited by Food Team did not involve the resolution of a dispute concerning the validity or enforceability of the fee and interest terms in the produce contract.

The issue here, which is disputed, is whether inclusion of the attorneys' fee and interest provisions on invoices 29CFF04155 and 29CFF01017 and Unilink's failure to timely object to the inclusion of those provisions, caused the attorneys' fee and interest provisions to become additional enforceable terms of the Broccoli and Cauliflower Contracts. As further discussed below, the interest provision became a term of the Contracts, but the attorneys' fee provision did not.

The interest provision did not materially alter the Broccoli or Cauliflower Contract and thus became a provision of the Contracts in the absence of a timely objection to the interest term by Unilink. Comment 5 to 13 P.S. § 2205 provides "[e]xamples of clauses which involve no element of unreasonable

-32-

surprise and which therefore are to be incorporated in the contract unless notice of objection is seasonably given" and expressly includes "a clause providing for interest on overdue invoices...where they are within the range of trade practice and do not limit any credit bargained for".  13 P.S. § 2207, cmt. 5.

Indeed, when applying section 2207 to a 1.5% per month interest charge on past due invoices, the Superior Court of Pennsylvania "[had] little difficulty in determining that the interest charge term [was] not one that materially alter[s] the agreement" and therefore held that the 1.5% interest charge included on the invoice in that case became a term of the contract.  Herzog Oil Field Services, Inc. v. Otto Torpedo Company, 391 Pa.Super. 133, 138, 570 A.2d 549, 551 (Pa.Super.Ct. 1990).  Accordingly, when Unilink did not timely object to the inclusion of the interest provision on invoices 29CFF04155 and 29CFF01017, the interest term of 1.5% per month on past due invoices became a term of the Broccoli and Cauliflower Contracts.

However, the additional provision for attorneys' fees which Food Team included on invoices 29CFF04155 and 29CFF01017 is a different matter under section 2207.  By contrast to the 1.5% per month interest fee, the Herzog Court held that "the provision calling for the addition of an attorney's fee of 25% of the balance due is a material alteration and, therefore, did not

-33-

become part of the contract." Herzog, 391 Pa.Super. at 139, 570 A.2d at 551.

The Superior Court of Pennsylvania also cited with approval a decision of the Supreme Court of Utah which held that a provision for "reasonable attorney's fees" purportedly added to the parties' (both merchants) contract through inclusion in the seller's invoice constituted a material alteration and, therefore, did not become an enforceable term of the parties' contract. Johnson Tire Service, Inc. v. Thorn, Inc., 613 P.2d 521, 529 (Utah 1980), cited with approval by Herzog, 391 Pa.Super. at 140, 570 A.2d at 552.

Here, the provision for attorneys' fees requires the buyer, Unilink, to pay "all attorneys' fees" in connection with collection of past due invoices.[27]  There is no proportional or qualifying language as was present in Herzog, 391 Pa.Super. at 139, 570 A.2d at 551 ("25% of the balance due"), and Johnson, 613 P.2d at 529 ("reasonable").  Where such proportional language mediating an additional provision for attorneys' fees did not forestall the conclusion that the additional provision for attorneys' fees would materially alter the merchants' contracts, I cannot but conclude that pursuant to 13 P.S. § 2207, the additional provision that

---

[27]     See, e.g., Invoice 29CFFFF04115, Ex. L, Doc. 39-4 at pg.51.

> [i]n the event that any action of proceeding is commenced to enforce the terms of this transaction or to enforce the seller's PACA trust rights, the buyer agrees to pay all costs of enforcement, including *all attorneys' fees*, together with any costs and expenses, as additional sums owed in connection with this transaction[,]

would materially alter the Broccoli and Cualiflower Contracts between Food Team and Unilink.

Accordingly, I conclude that the additional provision for attorneys' fees first included on invoices 29CFF04155 and 29CFF01017 did not become an enforceable term of the Broccoli or Cauliflower Contract.

### PACA-Without-Fees Invoices

In Plaintiff's Memorandum, Food Team explained that it was seeking summary judgment in its favor on four invoices -- 29CFF010242, 29CFF01016, 29CFF04133, and 29CFF02901 -- which included PACA-trust-preservation language but did not include an attorneys' fees and interest provision.[28]

However, Plaintiff's Reply updates Food Team's position regarding these four invoices and states that three of the four invoices have been paid in full. Specifically, Plaintiff's Reply states that three of the four invoices -- 29CFF010242, 29CFF01016, and 29CFF04133 -- are fully satisfied by payments

---

[28] Plaintiff's Memorandum at pages 6-7.

-35-

made by Unilink.[29]  The fourth of those "PACA-without-fees" invoices -- 29CFF02901 -- is contested.

Food Team contends that Uninlink Check No. 13698 was insufficient by $26,115.70 to satisfy the amount owed on invoice 29CFF02901, plus statutory interest.[30]  The total amount claimed by the three PACA invoices which Unilink specified as satisfied by Check No. 13698 is $70,864.80.[31]  Unilink also contends that Check No. 13698 satisfied the $786.24 that it owed on one non-PACA invoice.  As noted above, Check No. 13698 was made out for $44,749.10 -- an amount which is $26,115.70 less than the amount owed on the three PACA inovices and $26,901.94 less than the total amount claimed for the four invoices which defendants claim are satisfied by Check No. 13698.

Defendants contend that Unilink Check No. 13698 satisfied in full the amounts owed to Food Team on four invoices -- invoices 29CFF010242 (PACA-only), 29CFF02901 (PACA-only), 29CFF04113 (PACA-only), and 29CFF04111 (non-PACA, non-fee).[32]  The basis for defendants' assertion that a check for $44,749.10

---

[29]    Food Team states that invoice 29CFF01016 was fully satisfied by Unilink Check No. 13627 and that invoices  29CFF010242 and 29CFF04133 were fully satisfied by Unilink Check No. 13698.  (Plaintiff's Reply at pages 1-2.)

[30]    Plaintiff's Reply at page 2.

[31]    $22,778.40 on invoice 29CFF010242, plus $21,756.00 on invoice 29CFF04113, plus $26,330.40 on invoice 29CFF02901 equals a total of $70,864.80 on the three PACA invoices which defendants claim are satisfied by Check No. 13698.

[32]    Declaration of Sue A. Haar, Exhibit 5.

constituted payment in full for $71,651.04 worth of invoices is based on Unilink's claim of entitlement to $26,901.94 in credits for produce on invoices 29CFF01012 and 29CFF01014 which Unilink says was paid for and later rejected when Unilink discovered it to be unusable because of the presence of 3/4-inch worms.

As Food Team correctly notes,[33] the credits which Unilink seeks to claim are part of the counterclaims against Food Team. At oral argument, defense counsel stated that defendants did not file a motion for summary judgment because of the factual dispute about whether or not the produce supplied by Food Team was as warranted, or whether portions of it were compromised by the presence of 3/4 inch worms, foreign matter, and or freezer burn.

While a factual dispute exists concerning Unilink's entitlement to certain credits for prior payments to Food Team, it is undisputed that (1) Unilink received and accepted the produce on the PACA invoices 29CFF010242, 29CFF04113, and 29CFF02901; (2) Unilink owed Food Team the contract price on those PACA invoices; (3) the total amount owed on those three PACA invoices was $70,864.80; (4) the Unilink Check No. 13698 which Unilink directed as payment toward those three invoices (and one additional non-PACA invoice) was for the amount of $44,749.10; and (5) the difference between the amount paid

---

[33]     Plaintiff's Reply at page 2.

-37-

through Check No. 13698 ($44,749.10) and the total owed on the three PACA invoices ($70,864.80) is $26,115.70.

Accordingly, Food Team is entitled to summary judgment in its favor on the most recent of the three PACA invoices, invoice 29CFF02901, in the amount of $26,115.70 plus interest at the rate of provided for by the PACA. Whether and to what extent such a judgment may be satisfied through the application of credits to which Unilink proves its entitlement is beyond the scope of this motion will be depend on the proofs offered at trial.

<u>Secondary Liability Under PACA</u>

In addition to Unilink (its counterparty in the produce contracts at issue, and the PACA-licensee defendant), Food Team's Complaint also names Gary Gregory, Marc Behaegal, Akbar Boutarabi, Mike Moore and Pennsylvania Food Group, LLC ("PFG") "each individually" as defendants.

The Complaint alleges that each of defendants Gregory, Behaegal, Boutarabi, and Moore "[was] an officer, director, member, or person in a position to control [Unilink] at all times relevant to this action".[34] The Complaint alleges that PFG is "an entity whose members were in a position to control [Unilink] at all times relevant to this action".[35]

---

[34]     Complaint at ¶ 3b.-e.

[35]     Complaint at ¶ 3f.

Despite the fact that Food Team named multiple defendants in its Complaint, and despite pursuing secondary liability against the non-Unilink defendants, Plaintiff's Statement of Undisputed Material Facts refers only to "Defendant" in the singular -- and "Defendant" appears to refer to Unilink. Neither the individual defendants nor Pennsylvania Food Group are mentioned in Plaintiff's Statement of Undisputed Material Facts.

More importantly, Plaintiff's Statement of Undisputed Material Facts does not explain the role of the individual defendants or Pennsylvania Food Group in the operation of Unilink and how those defendants were "*actually* able to control the PACA trust assets at issue." Bear Mountain, 623 F.3d at 172 (emphasis in original).

Indeed, the Third Circuit explicitly stated that "[a] formal title alone is insufficient" to establish the requisite control over PACA trust assets to support a finding of individual liability. Id.

The record here is bare concerning the actual involvement of Mr. Moore and the Pennsylvania Food Group in the operations of Unilink or with the PACA assets at issue here.[36]

---

[36] The Third Circuit noted that an individual's formal title within a PACA-licensed business is particularly insufficient to establish liability when the business is a "mom and pop" corporation as the corporate defendant was in Bear Mountain. 623 F.3d at 172.

Here, the representations of defense counsel at oral argument do not depict Unilink as a "mom and pop" operation. Specifically, defense

(Footnote 36 continued):

-39-

**43**

Accordingly, plaintiff has not produced record evidence beyond the averments in its Complaint which would establish individual secondary liability against Mr. Moore or the Pennsylvania Food Group. Therefore, I deny plaintiff's motion for summary judgment to the extent that it seeks entry of judgment against Mr. Moore and the Pennsylvania Food Group.

However, the record does contain evidence indicating Mr. Gregory's role in Unilink's operations and his ability to control the PACA trust assets. Specifically, Mr. Gregory's own declaration submitted in opposition to Plaintiff's Motion for Summary Judgment states that he negotiated the contracts at issue with Dale Brunton, a Sales Agent for Food Team. Mr. Brunton's own affidavit confirms that he negotiated the contracts with Mr. Gregory.[37] In addition, defendants admit that Gary Gregory, Marc Behaegal, and Akbar Boutarabi had discretionary control of

_____

(Continuation of footnote 36):

counsel stated that "Unilink's out of business. It was sold. A very profitable company. It was sold to Seneca Foods, who took over the packing facility, state of the art, a very sophisticated operation." (Transcript of Motion Hearing, February 3, 2012 ("Trans."), at page 47.)

Nonetheless, it remains that -- beyond plaintiff's assertions of control in its Complaint -- nothing of record establishes the involvement of Mr. Behaegal, Mr. Boutarabi, Mr. Moore, or the Pennsylvania Food Group in the operations of Unilink or how they were able to actually exercise control of the PACA trust assets at issue in this matter. Under the standard of review on summary judgment articulated above, the assertions in plaintiff's Complaint against Mr. Behaegal, Mr. Boutarabi, Mr. Moore, or the Pennsylvania Food Group are insufficient to support entry of summary judgment against those defendants.

[37]    Declaration of Defendant Gary Gregory, With Exhibits, in Opposition to Plaintiff's Motion for Summary Judgment at ¶ 2; Motion for Summary Judgment, Exhibit B, Affidavit of Dale A. Brunton at ¶¶ 2-3, and 29.

Unilink and its assets at the times relevant to these
transactions.[38]

Accordingly, I conclude that Mr. Gregory, Mr. Behaegal,
and Mr. Boutarabi were "*actually* able to control the PACA trust
assets at issue" here and because their "ability to control is
core", Mr. Gregory, Mr. Behaegal, and Mr. Boutarabi are subject
to secondary individual liability under PACA. <u>Bear Mountain</u>, 623
F.3d at 172 (emphasis in original).

<u>Non-Trust Claims</u>

Food Team seeks summary judgment in its favor
concerning Uninlink's alleged breach of contract concerning six
invoices which contain neither the PACA-trust-preservation
language nor the provisions for attorneys' fees and costs:
invoices 29CFF04111, 29CFF01008, 29CFF01012, 29CFF01014,
29CFF01015 and 28CFF01019. Specifically, Food Team contends that
Unilink has not paid the full contract price for these six
invoices and that such failure to pay constitutes a breach of the
Broccoli Contract and Cauliflower Contract because "Unilink
accepted all six (6) loads at its receiving facility, unloaded
those containers and then stored the Produce for several weeks to
several months before even complaining about alleged defects" --

---

[38] Defendants' Pretrial Statement of Facts with Proposed Conclusions
of Law, List of Trial Witnesses and List of Exhibits at ¶ 24.

-41-

namely worms and foreign materials in some of the broccoli, and freezer burn on some of the cauliflower.[39]

Food Team also seeks summary judgment on its breach of contract claim alleging that Unilink wrongfully repudiated the balance of the Broccoli and Cauliflower Contracts.

Defendants have provided record evidence which suggests that invoices 28CFF01019, 29CFF01012 and 29CFF01014 were paid in full.[40] Moreover, there is a dispute regarding whether, and in what amount, Unilink paid Food Team for the produce billed on invoice 29CFF04111.[41] Accordingly, summary judgment is not proper on those three invoices.

Moreover, there is a factual dispute concerning both whether or not any produce supplied to Unilink by Food Team was compromised by the presence of freezer burn, 3/4 inch broccoli worms, or foreign objects, as well as the resale price and incidental costs of resale of the repudiated produce. Accordingly, summary judgment on plaintiff's wrongful-repudiation breach of contract claim is inappropriate.

Unilink admits that the produce on invoices 29CFF01015, 29CFF04111 and 28CFF01008 was received, unloaded, and stored in

---

[39]     Plaintiff's Memorandum at page 8.

[40]     Declaration of Sue A. Haar, With Exhibits, in Opposition to Plaintiff's Motion for Summary Judgment, Exhibit 1.

[41]     Id.

-42-

its cold storage facility before it was pulled for production and the alleged defects were discovered.[42]

Food Team contends that the actions taken by Unilink – specifically, unloading the shipments of produce on invoices 29CFF04111, 29CFF01008, 29CFF01012, 29CFF01014, 29CFF01015 and 28CFF01019 and storing the produce in its cold storage facility prior to pulling the produce for inspection -- constituted acceptance of the produce on those invoices which triggered Unilink's duty to pay the contract price for the produce.[43]

Food Team begins the Summary of Argument section of Plaintiff's Memorandum with the "preliminary note, [that] the transactions in this case are sales of goods over $500[.00] so the provisions of Article 2 of the UCC appl[y]."[44]

The Pennsylvania UCC specifies what constitutes acceptance of goods as follows:

> (a) General rule. -- Acceptance of goods occurs when the buyer:
>
> (1) after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their nonconformity;
>
> (2) fails to make an effective rejection (section 2602(a)), but such acceptance does

---

[42] Defendants' Response to Statement of Material Facts at ¶¶ 69, 72, and 74; see Declaration of Sue A. Haar at ¶ 3.

[43] Plaintiff's Memorandum at page 7.

[44] Plaintiff's Memorandum at page 2.

-43-

not occur until the buyer has had a reasonable opportunity to inspect them; or

(3) does *any act inconsistent with the ownership of the seller*; but if such act is wrongful as against the seller it is an acceptance only if ratified by him.

(b)   Part of commercial unit. -- Acceptance of a part of any commercial unit is acceptance of that entire unit.

13 Pa.C.S.A. § 2606 (emphasis added).

The regulations promulgated by the Secretary of the Department of Agriculture pursuant to PACA define "acceptance" as follows:

(dd) Acceptance means:

(1) *Any act by the consignee signifying acceptance of the shipment, including diversion or unloading;*

(2) Any act by the consignee which is inconsistent with the consignor's ownership, but if such act is wrongful against the consignor it is acceptance only if ratified by him; or

(3) Failure of the consignee to give notice of rejection to the consignor within a reasonable time as defined in paragraph (cc) of this section: Provided, That acceptance shall not affect any claim for damages because of failure of the produce to meet the terms of the contract.

7 C.F.R. § 46.2(dd)(emphasis added).

Here, the undisputed record evidence demonstrates that Uninlink accepted the produce shipped by Food Team mentioned on the six non-PACA invoices.  Unilink's President, defendant Gary

-44-

48

Gregory, stated that Unilink's business "involved custom packing of private-label frozen produce for major grocery chain stores in 1 and 2 pound bags and in larger bags for food service companies."[45]

As part of its business model, Unilink would receive wholesale quantities of frozen produce from supplies like Food Team "and place it in [its] cold storage freezers until needed."[46]  The frozen produce would be delivered to Unilink "as palletized freight in 40-60 pound cartons", and the pallets would be "wrapped in plastic stretch material to hold the cartons during handling" by Unilink.[47]  The plastic-wrapped pallets would then be pulled from Unilink's cold-storage freezers for production, and "the pallets and cartons would be broken down [and] the vegetables emptied into larger containers called 'totes' which held between 800 and 1,000 pounds of product."[48]

Mr. Gregory also described the procedures by which Unilink inspected the produce received from Food Team and its other suppliers -- once the produce was "in Unilink's possession."[49]  First, at the time a truck- or container-load of

---

[45]    Declaration of Defendant Gary Gregory at ¶ 3.

[46]    Declaration of Defendant Gary Gregory at ¶ 4.

[47]    Id.

[48]    Id.

[49]    Declaration of Defendant Gary Gregory at ¶ 5.

produce was delivered to Unilink's facility, "[a] cursory inspection was done...[where] several cartons of product were taken from the front, middle and end of each truck or container load."[50]

During these initial inspections, "pallet wraps would be opened" and then individual "cartons would be removed and opened and the contents checked for obvious defects" and "small quantities of product sent to [Unilink's] lab for examination".[51] Then the opened cartons would be "resealed and returned to the pallets which were rewrapped in plastic and moved into storage".[52]

Unilink does not contend that the alleged defects with the produce referred to on the six non-PACA invoices were discovered during Unilink's initial "cursory" inspection of the produce upon its delivery and prior to its placement in Unilink's cold-storage freezers. Rather, the record evidence provided by Unilink confirms its position that the defects with the produce supplied by Food Team were "found when the commodities were

---

[50]    Declaration of Defendant Gary Gregory at ¶ 5.

[51]    Id.

[52]    Id.

pulled from storage and sent to the inspection and production lines" at Unilink's facility.[53]

The regulations promulgated pursuant to the PACA expressly include "diversion or unloading" as an act signifying acceptance of a shipment of produce. 7 C.F.R. § 46.2(dd); <u>Lionheart Group</u>, 59 Agric.Dec. at 459. Moreover, I find that the actions taken by Unilink -- unloading, unpacking, and storing in its own freezer -- constitute action inconsistent with Food Team's ownership of the produce and, accordingly, constituted acceptance of which, in turn, gave rise to a duty to pay the contract price for the produce. <u>See</u> 13 Pa.C.S.A. §§ 2606(a), 2607(a).

---

[53]     Declaration of Sue A. Haar at ¶ 3. This is consistent with the representations made by defense counsel at oral argument on Plaintiff's Motion for Summary Judgment.  Specifically, defense counsel stated:

> Those arrival inspections however, were only cursory to get the grade established, [and] if that's fine,...to take out the lab samples.  [Unilink] then unloaded the trucks and the palettes...[which were] placed in the cold storage facility inside Unilink's freezers in a discrete area....  Now when [the loads of produce] go to production, which may be a week later, it could be a month later, the palettes are opened, the shrink wrap is taken off, the boxes are dumped into large totes...[and] then taken into the production area...and the totes one by one are dumped onto a feeding machine that then puts the...broccoli...or cauliflower, up on an inspection line.... When that occurred,...Unilink began finding the worms in Food Team's broccoli.

Transcript of Motion Hearing, February 3, 2012 ("N.T.") at page 35, line 14 through page 36, line 23.
     Later during the hearing, defense counsel stated that "[c]haracteristically, given Unilink's operation,...[Unilink] would put [produce] into cold storage, and then when [the produce] went to production [Unilink] would...put it through a more careful inspection".  N.T. at page 39, lines 15-18.

-47-

Accordingly, I grant Plaintiff's Motion for Summary Judgment to the extent that Food Team seeks a declaratory ruling that Unilink accepted and has a duty to pay the contract price for the produce on invoices 29CFF01008 and 29CFF01015.

## CONCLUSION

For the foregoing reasons, I grant in part and deny in part plaintiff's motion for partial summary judgment. For the reasons expressed in the Summary of Decision section of this Opinion, above, I grant Plaintiff's Motion for Summary Judgment for unpaid balances due for produce billed on certain invoices, for contractual interest on certain invoices and statutory interest on certain other invoices, and for a declaratory ruling that defendant Unilink has a duty to pay for certain invoices. In those regards, I entered judgment in favor of plaintiff and against defendants Unilink, Gregory, Behaegal and Boutarabi in the sum of $104,843.37, and against defendant Unilink in the additional sum of $46,608.20.

I denied Plaintiff's Motion for Summary Judgment seeking contractual attorneys' fees regarding certain invoices. In that regard, I entered judgment in favor of all defendants on plaintiff's claims for those attorneys' fees.

As discussed in this Opinion and reflected in the accompanying Order, I did not enter judgment in plaintiff's favor on its non-trust claims concerning invoices 28CFF01019,

-48-

52

29CFF04111, 29CFF01012 and 29CFF01014.  Moreover, I denied
Plaintiff's Motion for Summary Judgment concerning its wrongful-
repudiation claim against defendant Unilink and to the extent
that it sought to impose secondary liability against defendants
Mike Moore and Pennsylvania Food Group, LLC under the PACA.

Furthermore, defendants have asserted two counterclaims
against plaintiff which were not the subject of Plaintiff's
Motion for Summary Judgment and were not the subject of a cross-
motion for summary judgment by defendants.

Accordingly, these issues and the two counterclaims
remain for presentation and resolution at the non-jury trial
scheduled in the within matter.

-49-

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FOOD TEAM INTERNATIONAL, LTD,         )
                                      )     Civil Action
            Plaintiff                 )     No. 10-cv-03584
                                      )
      vs.                             )
                                      )
UNILINK, LLC,                         )
GARY GREGORY,                         )
MARC BEHAEGAL,                        )
AKBAR BOUTARABI,                      )
MIKE MOORE, and                       )
PENNSYLVANIA FOOD GROUP, LLC,         )
                                      )
            Defendants                )

O R D E R

NOW, this 17th day of May, 2012, upon consideration of

the following documents:

    (1)   Plaintiff's Motion for Summary Judgment, filed
December 10, 2011 (Document 39);[1] together with,

    (a)   Plaintiff's Memorandum of Law in Support of
Its Motion for Summary Judgment
(Document 39-1);

    (b)   Plaintiff's Statement of Undisputed Material
Facts in Support of Its Motion for Summary
Judgment (Document 39-2);

    (c)   Exhibits A through I (Documents 39-3 through
-11, respectively); and

    (d)   [Amended] Exhibit D filed January 25, 2012
(Document 49);

---

[1]    Plaintiff's Motion for Summary Judgment was filed twice: first on
December 9, 2012 as Document 38 without a supporting memorandum or exhibits,
and again on December 10, 2012 as Document 39 together with the supporting
memorandum and exhibits listed here.  Both copies of Plaintiff's Motion for
Summary Judgment (Documents 38 and 39) are identical.

(2) Defendants' Opposition to Plaintiff's Motion for Partial Summary Judgment, which opposition was filed January 3, 2012 (Document 45); together with,

    (a) Declaration of Sue A. Haar, with Exhibits, in Opposition to Plaintiff's Motion for Summary Judgment (Document 45-1);

    (b) Declaration of Defendant Gary Gregory, with Exhibits, in Opposition to Plaintiff's Motion for Summary Judgment (Document 45-2);

    (c) Declaration of Mark C.H. Mandell[,] with Exhibits, in Opposition to Plaintiff's Motion for Summary Judgment (Document 45-3);

    (d) Defendants' Response to Statement of Material Facts Alleged by Plaintiff to be Undisputed Pursuant to F.R.C.P. 56.1 (Document 45-4); and

    (e) Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Partial Summary Judgment(Document 46), and

        Appendix 1 [Opinion of Judge Susan Webber Wright in <u>Electrocraft Arkansas, Inc. v. Super Electric Motors, LTD,</u> 2010 WL 3307461 (E.D.Ark., Western Division, August 19, 2010)];

(3) Plaintiff's Reply to Defendants' Response to Motion for Summary Judgment, which reply was filed February 3, 2012 (Document 52); and

(4) Defendants' Surreply Memorandum of Law in Opposition to Plaintiff's Motion for Partial Summary Judgment, which surreply was filed February 3, 2012 (Document 53), together with,

    (a) Declaration of Mark C. H. Mandell[,] with Exhibit, in Further Response to Plaintiff's Motion for Summary Judgment (Document 54); and

- ii -

      (b)   Declaration of Sue A. Haar, With Exhibit, in Further Opposition to Motion for Summary Judgment (Document 55);

  (5)   Complaint filed July 21, 2010 (Document 1);

  (6)   Answer to Complaint with Affirmative Defenses and Counterclaims filed August 17, 2010 (Document 4); and

  (7)   Answer and Affirmative Defenses to Counterclaims filed September 15, 2010 (Document 12);

after oral argument held February 3, 2012; and for the reasons expressed in the accompanying Opinion,

IT IS ORDERED that Plaintiff's Motion for Summary Judgment is granted in part and denied in part.

IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment is granted to the extent that plaintiff seeks summary judgment in its favor concerning the unpaid balance due for the produce billed on invoices 29CFF04115, 29CF01017 and 29CFF02901.

IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment is granted to the extent that plaintiff seeks contractual interest at the rate of 1.5% per month on the balances due on invoices 29CFF04115 and 29CFF01017.

IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment is denied to the extent that it seeks contractual attorneys' fees in connection with its efforts to collect the amounts due on invoices 29CFF04115 and 29CFF01017.

- iii -

IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment is granted to the extent that plaintiff seeks a declaratory ruling that defendant Unilink, LLC, accepted, and has a duty to pay for, invoices 28CFF01019, 29CFF04111, 29CFF01008, 29CFF01012, 29CFF01014 and 29CFF01015.

IT IS FURTHER ORDERED that judgment is entered in favor of plaintiff Food Team International, LTD and against defendants Unilink, LLC; Gary Gregory; Marc Behaegal; and Akbar Boutarabi in the sum of $104,843.37, as follows:

(A)   in the sum of $44,452.60 for the unpaid balance due for produce billed on invoices 29CFF04115, 29CFF01017 and 29CFF02901; and

(B)   in the sum of $29,294.10 for contractual interest on the balances due on invoices 29CFF04115 and 29CFF01017;

(C)   in the sum of $26,115.70 for the unpaid balance due for produce billed on invoice 29CFF02901; and

(D)   in the sum of $4,980.97 for statutory interest on the balance due on invoice 29CFF02901.

IT IS FURTHER ORDERED that judgment is entered in favor of plaintiff Food Team International, LTD and against defendant Unilink, LLC in the sum of $46,608.20 for the unpaid balance due on invoices 29CFF01008 and 29CFF01015.

- iv -

IT IS FURTHER ORDERED that judgment is entered in favor of defendants Unilink, LLC; Gary Gregory; Marc Behaegal; Akbar Boutarabi; Mike Moore; and Pennsylvania Food Group, LLC on plaintiff's claims for contractual attorneys' fees in connection with plaintiff's efforts to collect the amounts due on invoices 29CFF04115 and 29CFF01017.

                              BY THE COURT:


                              /s/ James Knoll Gardner
                              James Knoll Gardner
                              United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FOOD TEAM INTERNATIONAL, LTD,         )
                                      )     Civil Action
            Plaintiff                 )     No. 10-cv-03584
                                      )
      v.                              )
                                      )
UNILINK, LLC,                         )
GARY GREGORY,                         )
MARC BEHAEGEL, and                    )
AKBAR BOUTARABI,                      )
                                      )
            Defendants                )

**VERDICT**

NOW, this 30th day of September, 2013, after trial
without jury before the undersigned on May 18, 21-22, and 24,
2012; and based upon the Findings of Fact, Conclusions of Law,
and Discussion contained in the accompanying Adjudication, I
find as follows:

On plaintiff's non-PACA-trust claims[1] for failure to
pay invoices 1008, 1015, and 4111, I find in favor of plaintiff
Food Team International, LTD, and against defendant Unilink, LLC
in the amount of $23,281.75.

On plaintiff's claim for wrongful repudiation
concerning yet-to-be-shipped broccoli and cauliflower, I find in

---

[1]          See Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C.
§§ 499a-499t.

59

favor of plaintiff Food Team International, LTD and against defendant Unilink, LLC in the amount of $23,794.73.

On plaintiff's non-PACA-trust claims for failure to pay, I find in favor of defendants Gary Gregory, Marc Behaegel, and Akbar Boutarabi and against plaintiff Food Team International, LTD.

On the Second Counterclaim asserted by defendant Unilink, LLC for breach of contract in supplying defective produce, I find in favor of plaintiff Food Team International, LTD and against defendant Unilink, LLC.

BY THE COURT:


_/s/ JAMES KNOLL GARDNER___
James Knoll Gardner
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FOOD TEAM INTERNATIONAL, LTD,          )
                                        )      Civil Action
                  Plaintiff             )      No. 10-cv-03584
                                        )
          vs.                           )
                                        )
UNILINK, LLC,                           )
GARY GREGORY,                           )
MARC BEHAEGEL, and                      )
AKBAR BOUTARABI,                        )
                                        )
                  Defendants            )

                    *       *       *

APPEARANCES:

          JOHN C. CREES, ESQUIRE
          MICHAEL J. KEATON, ESQUIRE
               On behalf of Plaintiff

          MARK C.H. MANDELL, ESQUIRE
               On behalf of Defendants

                    *       *       *

**A D J U D I C A T I O N**

JAMES KNOLL GARDNER
United States District Judge

        The undersigned presided over a non-jury trial on the
Complaint of plaintiff Food Team International ("Food Team")
against defendants Unilink, LLC ("Unilink"), Gary Gregory, Marc
Behaegel, and Akbar Boutarabi, as well as the counterclaim
asserted by defendant Unilink against plaintiff Food Team.  At
the close of the trial, I took the matter under advisement.
Hence this Adjudication.

## SUMMARY OF DECISION

This action arises from a business dispute between plaintiff Food Team (a supplier of frozen produce) and defendant Unilink (a purchaser of wholesale quantities of frozen produce who, in turn, package and sell frozen produce to retail merchants).

Based upon the findings of fact and conclusions of law discussed below, I entered a verdict dated September 30, 2013, which accompanies this Adjudication.

In the Verdict, I find in favor of plaintiff Food Team International, LTD and against only defendant Unilink, LLC[1] on plaintiff's non-PACA claims for failure to pay concerning invoices 1008, 1015, and 4111, and enter judgment in favor of plaintiff Food Team and against defendant Unilink in the amount of $23,281.75.

In the Verdict, I also find in favor of plaintiff Food Team International, LTD and against only defendant Unilink, LLC on plaintiff's claim for wrongful repudiation concerning yet-to-be-shipped broccoli and cauliflower, and enter judgment in favor

---

[1] The reason I found against only defendant Unilink and not against individual defendants Gary Gregory, Marc Behaegel, and Akbar Boutarabi on plaintiff's non-PACA-trust claims for failure to pay invoices is because at trial plaintiff abandoned its non-PACA-trust claims against the three individual defendants to the extent plaintiff was asserting such claims.

-2-

of plaintiff Food Team and against defendant Unilink in the amount of $23,794.73.[2]

Finally, in the Verdict, I find in favor of plaintiff Food Team International, LTD and against defendant Unilink, LLC on the Second Counterclaim asserted by defendant Unilink against plaintiff Food Team for breach of contract in supplying defective produce, seeking incidental damages incurred by Unilink in storing the allegedly defective produce diverted by Unilink to a third party cold storage facility, for the reasons expressed below in the Discussion section under the subsection headed "Unilink's Remaining Counterclaim".

## JURISDICTION

This court has jurisdiction over the subject matter of plaintiff's federal claims pursuant to the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499e(c)(5), and 28 U.S.C. § 1331. This court has supplemental jurisdiction over plaintiff's pendant state-law claims pursuant to 28 U.S.C. § 1367.

## VENUE

Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to plain-

---

[2] On plaintiff's PACA-trust claims for failure to pay concerning invoices 2901, 4115, and 1017, judgment was entered in favor of plaintiff Food Team International, LTD and against defendants Unilink, LLC, Gary Gregory, Marc Behaegel, and Akbar Boutarabi, by Order granting in part plaintiff's motion for summary judgment and accompanying Opinion dated May 17, 2013, and is not affected by this Adjudication.

-3-

tiff's claims occurred within this district and because a sub-
stantial part of the property which is the subject of this
action is located in this district.

Specifically, the perishable agricultural commodities
which are at the center of the parties' dispute were delivered
to defendant Unilink, LLC's facility in Rheems, Pennsylvania and
were and/or are stored in a cold-storage facility in Lancaster,
Pennsylvania. Both Rheems and Lancaster are within Lancaster
County, which is within this judicial district.

## PROCEDURAL HISTORY

Plaintiff initiated this action by filing its
Complaint on July 21, 2010.[3] On August 17, 2012 defendants filed
an Answer to Complaint with Affirmative Defenses and
Counterclaims ("Answer and Counterclaims").[4] On September 15,
2012, pursuant to a court-approved stipulation expanding
plaintiff's time to respond to defendants' counterclaims,
plaintiff filed its Answer and Affirmative Defenses to
Counterclaims.[5]

On February 18, 2011 I conducted a Rule 16 status
conference by telephone with counsel for the parties. After

---

[3]     Document 1. (Document numbers cited in this Adjudication refer to
Docket Entries in the official docket Number 10-cv-03584-JKG in this matter.)

[4]     Document 4.

[5]     Document 12.

-4-

64

that status conference, I entered a Rule 16 Status Conference
Order dated February 18, 2011 and filed February 24, 2011.[6]   At
that conference and in that order, I attached this case for a
non-jury trial during a two-week trial term commencing
January 17, 2012, and set other appropriate pretrial deadlines.

My February 18, 2011 Order established August 31, 2011
as the deadline for either party to file dispositive motions,
including motions for summary judgment, and set October 26, 2011
as the date for oral argument on any dispositive motion filed.

By Order dated August 24, 2011 and filed August 25,
2011,[7] I granted plaintiff's uncontested motion to extend
discovery and accordingly modified in part my February 18, 2011
Rule 16 Status Conference Order.  Specifically, I extended the
discovery deadline until October 17, 2011, established
December 9, 2011 as the modified deadline for any dispositive
motions, and re-scheduled oral argument on dispositive motions
for February 3, 2012.  Finally, I re-attached this case for a
non-jury trial during a two-week trial term commencing May 14,
2012.

---

[6]          Document 22.

[7]          Document 34.

-5-

65

**<u>Partial Summary Judgment</u>**

Plaintiff's Motion for Summary Judgment was filed December 9, 2011[8] and refiled with eleven attachments on December 10, 2011.[9] Defendants' Opposition to Plaintiff's Motion for Partial Summary Judgment was filed January 3, 2012.[10] On February 3, 2012 Plaintiff's Reply to Defendants' Response to Motion for Summary Judgment[11] and Defendants' Surreply Memorandum of Law in Opposition to Plaintiff's Motion for Partial Summary Judgment[12] were filed. Oral argument was conducted on Plaintiff's Motion for Summary Judgment on February 3, 2012. At the conclusion of oral argument, I took the matter under advisement.

By Order and accompanying Opinion dated May 17, 2012 and filed May 18, 2012,[13] I granted in part and denied in part Plaintiff's Motion for Summary Judgment. Specifically, for the reasons expressed in that Opinion, I granted plaintiff's motion to the extent that it sought summary judgment in its favor concerning the unpaid balance due for the produce billed on

---

[8]        Document 38.

[9]        Document 39.

[10]       Document 45.

[11]       Document 52.

[12]       Document 53.

[13]       Documents 69 and 68, respectively.

-6-

invoices 4115, 1017 and 2901, each of which contained a PACA-trust-preservation clause.[14]  I also granted plaintiff's motion to the extent that it sought contractual interest at the rate of 1.5% per month on the balances due on invoices 4115 and 1017. Furthermore, I granted plaintiff's motion to the extent that it sought a declaratory ruling that defendant Unilink accepted, and had a duty to pay for, invoices 1019, 4111, 1008, 1012, 1014 and 1015.[15]

Accordingly, I entered judgment in favor of plaintiff Food Team International, LTD and against defendants Unilink, LLC; Gary Gregory; Marc Behaegel; and Akbar Boutarabi on the PACA-trust claims in the sum of $104,843.37, as follows:

(A)   in the sum of $44,452.60 for the unpaid balance due for produce billed on invoices 4115 and 1017;

(B)   in the sum of $29,294.10 for contractual interest on the balances due on invoices 4115 and 1017;

(C)   in the sum of $26,115.70 for the unpaid balance due for produce billed on invoice 2901; and

---

[14]        Throughout the non-jury trial of this case, all invoices were referred to by their last four digits and Unilink checks were referred to by their five-digit number.  See Transcript of Non-Jury Trial before The Honorable James Knoll Gardner[,] United States District Judge, May 18, 2012 (Document 77)("N.T. Day 1") at page 25.  For ease of reference, I will refer to the daily trial transcripts in the manner indicated in footnote 20, below.

[15]        The total amount invoiced by Food Team to Unilink on those six invoices -- 1019 ($23,540.00), 4111 ($21,756.00), 1008 ($23,475.80), 1012 ($22,598.40), 1014 ($23,133.40), and 1015 ($23,133.40) -- is $137,637.00. See Plaintiff's Trial Exhibit 23 at pages 2, 4, 6-8, 10.

-7-

(D)  in the sum of $4,980.97 for statutory interest on
the balance due on invoice 2901.[16]

Additionally, I granted plaintiff's motion and entered
judgment in favor of plaintiff Food Team International, LTD and
against defendant Unilink, LLC in the sum of $46,608.20 for the
unpaid balance due on invoices 1008 and 1015.[17]

However, I denied plaintiff's motion to the extent
that it sought summary judgment that plaintiff for attorney fees
incurred in connection with its efforts to recover the unpaid
balance on invoices 4115 and 1017.[18]

Accordingly, the balance of plaintiff's claims against
defendants Unilink, LLC, Gary Gregory, Marc Behaegel, Akbar
Boutarabi, Mike Moore, and Pennsylvania Food Group, LLC, and the
counterclaims asserted by defendant Unilink against plaintiff

---

[16]     All three of these invoices -- 4115 (cauliflower florets), 1017
(broccoli florets), and 2901 (red pepper strips) -- contained a "PACA-trust-
preservation" clause in a text box at the bottom of the invoice.  Two of the
three invoices -- 4115 and 1017 -- also contained an interest rate provision
if the for past-due charges.  See Plaintiff's Trial Exhibit 22 at pages 2-4.

[17]     Neither of these two invoices -- 1008 and 1015 -- contained a
PACA-trust preservation language or a contractual interest provision for
past-due charges.  See Plaintiff's Trial Exhibit 23 at pages 4, 8.

[18]     In addition to the PACA-trust preservation language and the
interest rate provision, those two invoices -- 4115 and 1017 -- also
contained a provision purportedly entitling plaintiff to attorney fees.  See
Plaintiff's Trial Exhibit 22 at pages 2-4.

-8-

Food Team remained for disposition at the non-jury trial of this case.[19]

## **Non-Jury Trial**

A non-jury trial was held before the undersigned on May 18, 21-22, and 24, 2012.[20]

### Withdrawal of Claims Against Mike Moore and Pennsylvania Food Group, LLC

On the first day of trial, during its opening statement, plaintiff made an oral motion, through its lead trial counsel, Michael J. Keaton, Esquire, to withdraw all claims of plaintiff against defendants Mike Moore and Pennsylvania Food Group, LLC with prejudice. I conducted a colloquy of plaintiff's representative, Dale A. Brunton, and determined that Mr. Brunton had authority to bind plaintiff to the decision to withdraw the claims and that plaintiff concurred in the oral motion made by its counsel.

Accordingly, and in the absence of objection from defendants, I entered an Order granting plaintiff's oral motion and dismissing all claims against defendants Mike Moore and

---

[19] The two counterclaims are asserted by defendant Unilink only, and not by the individual defendants. See Answer and Counterclaims at pages 7-10; N.T. Day 1 at pages 69-70, and 78-79.

[20] A verbatim transcript of the notes of testimony of each day of the non-jury trial was produced and filed on the docket on June 6, 2012: Transcript of Non-Jury Trial held May 18, 2012 (Document 77)("N.T. Day 1"); Transcript of Non-Jury Trial held May 21, 2012 (Document 78) ("N.T. Day 2"); Transcript of Non-Jury Trial held May 22, 2012 (Document 79)("N.T. Day 3"); and Transcript of Non-Jury Trial held May 24, 2012 (Document 80)("N.T. Day 4").

-9-

Pennsylvania Food Group, LLC from plaintiff's Complaint with prejudice.[21]

## Stipulation to Entry of Judgment on First Counterclaim

Defendant Unilink asserted two counterclaims against plaintiff Food Team. The First Counterclaim and Second Counterclaim asserted by defendant Unilink are separate claims for different damages flowing from the same alleged breach of contract by Food Team.

Specifically, at trial, defendant Unilink sought, on its First Counterclaim, $3,916 for the cost of replacement broccoli to cover the broccoli which was diverted to third party cold storage and broccoli which was never shipped because defendant Unilink cancelled the broccoli contract before the completion of its term. On its Second Counterclaim, Unilink sought $10,398.00 in freight charges, pallet costs, and storage costs related to the produce diverted to the third party cold storage facility.

On the first day of trial, again during its opening statement, plaintiff, through Attorney Keaton, agreed to the entry of judgment against it in the amount of $3,916.00 on the First Counterclaim asserted by defendant Unilink. However, in agreeing to the entry of judgment against it in that amount on

---

[21]     Order of the undersigned dated May 18, 2012 and filed May 22, 2013 (Document 71); see N.T. Day 1 at pages 17-23 (oral motion, colloquy, and order).

-10-

the First Counterclaim, plaintiff expressly provided that it did
not concede or admit to having committed any breach of contract
as alleged in the First Counterclaim asserted by defendant
Unilink.[22]

Plaitiff Food Team did not similarly concede to entry
of judgment in the amount sought by defendant Unilink on the
Second Counterclaim, but rather put Unilink to its proof as to
the alleged breach and damages asserted in the Second
Counterclaim.

<u>Presentation of Evidence and Testimony</u>

Plaintiff did not call any witnesses during the non-
jury trial, but did admit Plaintiff's Exhibits 1-30 into
evidence.[23] Following the admission of those exhibits, plaintiff
rested its case-in-chief.[24]

Additionally, on the third day of trial a joint
exhibit -- Plaintiff's Trial Exhibit 32 and Defendants' Exhi-
bit 7 -- was admitted into evidence by stipulation of the
parties.[25]

---

[22]     Order dated May 18, 2012 at page 2 n.1; <u>see</u> N.T. Day 1 at
pages 71-73.

[23]     N.T. Day 1 at page 43; N.T. Day 2 at pages 8-9, 31, and 34.

[24]     N.T. Day 2 at pages 38-41.

[25]     N.T. Day 3 at page 85.  Defendants' objection was sustained to
Plaintiff's Trial Exhibit 31, which was a partial copy of the complete
document which was eventually admitted jointly as Plaintiff's Trial Exhi-
bit 32 and Defendants' Exhibit 7.  <u>See</u> N.T. Day 3 at pages 77-84.

-11-

Four witnesses testified in defendants' case-in-chief:
Nurdin Hasagic (a former employee of Unilink)[26], defendant Gary
Gregory[27], defendant Marc Behaegel,[28] and Sue Haar (a former
employee of Unilink, who is now employed by defendant Gregory at
Frozen Food Development)[29]. Defendants admitted Defendants'
Exhibits 1-4[30] and 6-8 into evidence.[31]

Following the completion of defendants' case-in-chief
on the fourth day of trial, defendants' rested their case.
Closing arguments were held. At the conclusion of those
arguments, I took the matter under advisement.

---

[26]     See N.T. Day 2 at pages 45-128.

[27]     See N.T. Day 2 at pages 128-200.

[28]     See N.T. Day 2 at pages 200-211. Following defendant Behaegel's
testimony, plaintiff, through Attorney Keaton, made an oral motion to amend
the caption and docket in this matter to accurately reflect the spelling of
defendant Behaegel's (not, Behaegal) last name. I granted that oral motion
in the absence of objection. Order of the undersigned dated May 21, 2012 and
filed May 23, 2012 (Document 74); see N.T. Day 2 at pages 214-215.

[29]     N.T. Day 3 at pages 5-134.

[30]     Defendants' Exhibit 5 was marked, but was not offered or admitted
into evidence. However, Defendants' Exhibit 5 is identical to Plaintiffs'
Exhibit 28, which was offered and admitted into evidence at trial.

[31]     N.T. Day 3 at pages 11-12, 15, 85, 138-141.

-12-

72

## Post-Trial Submissions

Following completion of trial and preparation of the transcript of the proceedings, the parties submitted proposed findings of fact and conclusions of law.[32]

## FINDINGS OF FACT

Based upon the testimony and exhibits received during the non-jury trial, and the pleadings and record papers in this matter, I make the following findings of fact.[33]

This action arises from a business dispute between plaintiff Food Team Intenational, LTD (a supplier of frozen produce) and defendant Unilink, LLC (a purchaser of wholesale quantities of frozen produce who, in turn, package and sell frozen produce to retail merchants).

Defendant Unilink is wholly owned by former-defendant Pennsylvania Food Group LLC, which is, in turn owned by defendant Gary Gregory, defendant Marc Behaegel, defendant Akbar Boutarabi, and former-defendant Mike Moore, as well as, three

---

[32]     On June 21, 2012, plaintiff filed Plaintiff's Proposed Findings of Fact and Conclusions of Law (Document 83)("Plaintiff's Proposed Findings and Conclusions"), and defendants filed Defendants' Post-Trial Proposed Findings of Fact and Conclusions of Law (Document 84)("Defendants' Proposed Findings and Conclusions"), together with Defendants' Post-Trial Memorandum of Law in Support of Its Proposed Findings of Fact and Conclusions of Law (Document 85)("Defendants' Post-Trial Memorandum").

[33]     The Findings of Fact reflect my credibility determinations regarding the testimony and evidence presented at trial.  Credibility determinations are within the sole province of the finder of fact, in this case the court. Fed.R.Civ.P. 52; See, e.g., Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 715, 106 S.Ct. 1527, 1530, 89 L.Ed.2d 739, 745 (1986).

other individuals.[34]  Although Unilink is wholly owned by
Pennsylvania Food Group, LLC, defendants Gregory, Behaegel, and
Boutarabi are each officers and members of defendant Unilink,
LLC.

In the fall of 2008, Food Team and Unilink entered
into agreements for sale of certain frozen vegetables (frozen
broccoli and cauliflower florets, and frozen red pepper strips)
by Food Team to Unilink.  Accordingly, Unilink submitted three
purchase orders ("P.O.") to Food Team for the produce in October
2008 (P.O. 6122 for broccoli, and P.O. 6123 for cauliflower) and
December 2008 (P.O. 6238 for red pepper strips)(hereafter
referred to as "broccoli contract", "cauliflower contract", and
"red pepper contract").

The produce was to be shipped from January 2009
through August 2009.  Specifically, the agreement between Food
Team and Unilink was for the shipment of one shipping container
of frozen broccoli per week beginning January 2009 and
continuing through June 2009;[35] one shipping container of frozen
cauliflower every three weeks beginning March 2009 and
continuing through August 2009;[36] and one shipping container of

---

[34]      See N.T. Day 4 at pages 47, 50 (testimony of defendant Gary
Gregory).

[35]      Plaintiff's Trial Exhibit 4, Unilink P.O. 6122 dated 10/29/08.

[36]      Plaintiff's Trial Exhibit 5, Unilink P.O. 6123 dated 10/29/08.

-14-

red pepper strips each month beginning April 2009 and continuing through July 2009.[37]

The agreed-upon amount of broccoli listed on P.O. 6122 was 999,990 pounds.  The agreed-upon amount of cauliflower listed on P.O. 6123 was 450,000 pounds.  However, the parties agreed to increase the quantity term for broccoli to 1,100,000 pounds and the quantity term for cauliflower was increased to 500,000 pounds, and to extend the shipments of broccoli through the first week of July 2009.[38]

The poundage of broccoli and cauliflower were increased to permit Food Team to maximize the capacity of each shipping container.[39]  The purchase order for red pepper strips -- P.O. 6238 -- was submitted after the adjustment was made to the broccoli and cauliflower orders and did not need to be amended to maximize shipping container capacity.[40]

The shipments of frozen produce from Food Team to Unilink commenced in January 2009 and, initially, the frozen produce was delivered, received, paid for, and utilized by

---

[37]      Plaintiff's Trial Exhibit 10, Unilink P.O. 6238 dated 12/05/08.

[38]      Plaintiff's Trial Exhibit 8, copy of confirmatory e-mail sent from Magdalena Swieton to Dale Brunton on November 15, 2008.

[39]      Defendant Gregory testified credibly that the change in the poundage was made to reconcile the poundage with the number of shipping containers that would be sent during the applicable shipping window at the applicable rate, and thereby to allow Food Team to maximize the capacity of each shipping container.  See N.T. Day 2 at pages 132-133.

[40]      See Plaintiff's Trial Exhibit 10, Unilink P.O. 6238.

Unilink without incident. However, the business relationship between Food Team and Unilink began to erode in March 2009.

On March 10, 2009 the broccoli on invoice 1002 was delivered to Unilink. That invoice was paid by Unilink check number 13170 dated April 17, 2009.[41]

On March 12, 2009, Magdalena Swieton (a procurement employee for Unilink)[42], sent an e-mail to Dale Brunton (the sales agent for Food Team who negotiated the produce contracts with defendant Gary Gregory) which stated: "Hi Dale, Please review your pricing for broccoli florets -- PO 6122. Price decrease would be appreciated. Thank you."[43]

Neither Dale Brunton, nor any other Food Team employee or agent, agreed to a reduction in the contract price for broccoli florets requested by Unilink through Ms. Swieton at defendant Gregory's behest.

---

[41]      See Plaintiff's Trial Exhibit 11, copy of spreadsheet re. Accepted, Processed and Resold Loads; Defendants' Trial Exhibit 4, copy of spreadsheet prepared by Sue Haar, at page 1.

[42]      Plaintiff's Trial Exhibit 28, Transcript of Deposition of Magdalena Swieton taken October 26, 2011 ("Swieton Deposition"), at page 7.

[43]      Plaintiff's Trial Exhibit 12, copy of e-mail from Magdalena Swieton to Dale Brunton sent March 12, 2009.

-16-

On March 17, 2009 the broccoli on invoice 1004 was delivered to Unilink. That invoice was paid by Unilink check number 13214 dated April 22, 2009.[44]

On March 25, 2009 the broccoli on invoice 1020 was delivered to Unilink. That invoice was paid by Unilink check number 13409 dated May 13, 2009.[45]

On April 6, 2009 the broccoli on invoice 1009 was delivered to Unilink. That invoice was paid by Unilink check number 13409 dated May 13, 2009.[46]

On April 7, 2009 the cauliflower on invoice 4106 was delivered to Unilink. That invoice was paid by Unilink check number 13382 dated May 7, 2009.[47]

On April 16, 2009 Magdalene Swieton sent an e-mail to Dale Brunton which stated, "Dale, Please stop shipping broccoli florets until further notice. Thank you[.]"[48] Ms. Swieton's April 16, 2009 e-mail gave no reason for the hold requested on broccoli shipments, but she testified during her deposition that "[i]f there was a big drop in the demand from our [(Unilink's)]

---

[44]        See Plaintiff's Trial Exhibit 11, copy of spreadsheet re. Accepted, Processed and Resold Loads; Defendants' Exhibit 4, copy of spreadsheet prepared by Sue Haar, at page 1.

[45]        See footnote 44, supra.

[46]        See Id.

[47]        See Id.

[48]        Plaintiff's Trial Exhibit 13, copy of e-mail from Magdalena Swieton to Dale Brunton sent April 16, 2009.

-17-

customers, then we would stop the shipments" from Unilink's

suppliers.[49]

On April 17, 2009 Magdalena Swieton sent an e-mail to

Dale Brunton which stated:

> Dale,
>
> We found a lot of nails and other metal objects in
> products from China, including yours [(Food Team's)].
> I[n] addition we found cardboard pieces, worms in many
> cases with broccoli florets.  We are also rejecting a
> load for worms received on 4/14/09.
>
> **We had serious complaints from our customers.**
>
> This has to stop!
> Please send us your action plan how you want to avoid
> it.  Awaiting your reply.
>
> Thank you.[50]

On April 20, 2009 the broccoli on invoice 1013 was

delivered to Unilink.  That invoice was paid by Unilink check

number 13481 dated May 28, 2009.[51]

On May 1, 2009 Magdalena Swieton sent an e-mail to

Dale Brunton which stated:

> Dale,
>
> We received cauliflower on 4/28/09, PO 6123.

---

[49]     Plaintiff's Trial Exhibit 28, Swieton Deposition at page 19.

[50]     Plaintiff's Trial Exhibit 15, copy of copy of e-mail from
Magdalena Swieton to Dale Brunton sent April 17, 2009 (bold and underline in
original).

[51]     See Plaintiff's Trial Exhibit 11, copy of spreadsheet re.
Accepted, Processed and Resold Loads; Defendants' Exhibit 4, copy of
spreadsheet prepared by Sue Haar, at page 1.

-18-

Florets have freezer burn – up to 37% and minor
blemishes – up to 19%.  Product was graded as B.  We
can use it only for blends.

Please reply.
Thanks.[52]

On May 7, 2009 Unilink issued check number 13382 in
the amount of $103,700 -- with $23,540.00 against invoice 1019
(broccoli); $28,122.00 against invoice 2302 (sugar snaps);
$31,878.00 against invoice 3102 (water chestnuts); and
$20,160.00 against invoice 4106 (cauliflower).[53]

On May 11, 2009 the broccoli on invoice 1016 was
delivered to Unilink.  That invoice was paid by Unilink check
number 13627 dated June 11, 2009.[54]

Also on May 11, 2009, the broccoli on invoice 1024-2
was delivered to Unilink.  That invoice was paid by Unilink
check number 13698 dated June 19, 2009.[55]

On May 12, 2009 the cauliflower on invoice 4113 was
delivered to Unilink.  That invoice was paid by Unilink check
number 13627 dated June 19, 2009.[56]

---

[52]     Plaintiff's Trial Exhibit 16, copy of copy of e-mail from
Magdalena Swieton to Dale Brunton sent May 1, 2009.

[53]     Defendants' Trial Exhibit 1, copy of Unilink checks with payment
stubs and computer screen shots; Defendants' Trial Exhibit 4, copy of
spreadsheet prepared by Sue Haar, at page 1.

[54]     See Plaintiff's Trial Exhibit 11, copy of spreadsheet re.
Accepted, Processed and Resold Loads; Defendants' Trial Exhibit 4, copy of
spreadsheet prepared by Sue Haar, at page 1.

[55]     See footnote 54, supra.

[56]     See id.

On May 13, 2009 the red pepper strips on invoice 2901 were delivered to Unilink.[57]  Invoice 2901 is the first of the invoices submitted to Unilink by Food Team that contains the PACA trust-preservation provision on it.[58]

On May 24, 2009, after an inspection conducted on May 14, 2009, which was commissioned by plaintiff Food Team, a report was issued by Trans-Port Marine Surveyors, Inc. ("Trans-Port Marine") concerning the cauliflower on invoice 4111 which defendant Unilink had diverted to the third-party cold storage facility operated by Kreider Foods Inc. in Lancaster, Pennsylvania.

Defendant Unilink used 1,872 pounds of the cauliflower invoiced on 4111 and diverted the remaining 49,928 pounds to the third-party cold storage because of alleged freezer burn and riceyness.[59]  The third-party inspection report produced by Trans-Port Marine based upon its inspection of the cauliflower on invoice 4111 which Unilink diverted to Kreider's cold storage facility concluded that there was no evidence that the shipment of cauliflower concerning invoice 4111 had sustained transit-

---

[57]     Plaintiff's Trial Exhibit 11, copy of spreadsheet re. Accepted, Processed and Resold Loads.

[58]     Plaintiff's Trial Exhibit 22 at page 2, copy of Food Team Invoice 2901 dated May 13, 2009.

[59]     See Defendants' Trial Exhibit 2G, Unilink Frozen Cauliflower Score Sheet re. Invoice 4111; Defendants' Trial Exhibit 4, copy of spreadsheet prepared by Sue Haar, at page 1.

related damages, or otherwise suffered from freezer burn or
dehydration.[60]

On May 28, 2009 Unilink issued check number 13481 in
the amount of $70,323.61 -- with $1,458.41 (partial payment)[61]
against invoice 1008; $22,598.40 against invoice 1012;
$23,133.40 against invoice 1013; and $23,133.40 against
invoice 1014.

On June 3, 2009 Magdalena Swieton sent an e-mail to
Dale Brunton which stated:

> Good morning,
>
> Please stop all shipments.
> Will notify you when [to] resume shipments. **It will
> probably be within 2-3 weeks.** If you have any
> questions, please do not hesitate to call me.
>
> Thank you.[62]

On June 5, 2009 the cauliflower on invoice 4115 was
delivered to Unilink.[63] Invoice 4115 is the first invoice
submitted to Unilink by Food Team which contains both a PACA
trust-preservation provision, as well as a provision for 18%

---

[60]     Plaintiff's Trial Exhibit 17, Report of Survey issued May 24,
2010 by Trans-Port Marine Surveyors, Inc., at page 4.

[61]     The total amount charged on invoice 1008 is $23,475.80.

[62]     Plaintiff's Trial Exhibit 18, copy of e-mail from Magdalena
Swieton to Dale Brunton sent June 3, 2009 (emphasis added).

[63]     Plaintiff's Trial Exhibit 11, copy of spreadsheet re. Accepted,
Processed and Resold Loads.

annual interest on past due accounts and a provision for attorney fees incurred in connection with past due invoices.[64]

On June 9, 2009, the broccoli on invoice 1017 was delivered to Unilink.[65]  Like invoice 4115, invoice 1017 contains both a PACA trust-preservation provision, as well as a provision for 18% annual interest on past due accounts and a provision for attorney fees incurred in connection with past due invoices.[66]

On June 19, 2009 Unilink issued check number 13698 in the amount of $44,749.10 -- with $22,778.40 against invoice 1024 (broccoli); $26,330.40 against invoice 2901 (red pepper strips with PACA trust language); $786.24[67] against invoice 4111 (cauliflower); and $21,756.00 against invoice 4113 (cauliflower).

The sum of the amounts purportedly paid by check number 13698 is $71,651.04, an amount which is $26,901.94 greater than the actual amount for which check number 13698 was issued.  The difference between face value of check 13698 and the value of the amount of payment it allegedly represents is based upon credits claimed unilaterally by Unilink for

---

[64]     Plaintiff's Trial Exhibit 22 at page 3, copy of Food Team Invoice 4115 dated June 5, 2009.

[65]     Plaintiff's Trial Exhibit 11, copy of spreadsheet re. Accepted, Processed and Resold Loads.

[66]     Plaintiff's Trial Exhibit 22 at page 3, copy of Food Team Invoice 4115 dated June 5, 2009.

[67]     The total amount on invoice 4111 is $21,756.00.

-22-

allegedly-worm-infested broccoli on invoice 1012 ($3,768.54 for broccoli diverted to Kreider's cold storage) and invoice 1014 ($23,133.40 for the same).

When the $44,749.10 actually paid by check number 13698 is applied in chronological order from earliest to latest against the invoices to which Unilink directed it, the following results: $786.24 is applied against invoice 4111 (leaving $43,962.86 of the $44,749.10), then $22,778.40 is applied against invoice 1024 (leaving $21,184.46 of the $44,749.10), and then that remaining $21,184.46 is applied against the $21,756.00 charged on invoice 4113.

After the funds actually conveyed by check 13698 are exhausted, a balance of $571.54 remains due on invoice 4113, and there are no funds remaining from check 13698 to apply toward payment of the $26,330.40 charged for the produce on invoice 2901 (red pepper strips) which is covered by the PACA trust-preservation on invoice 2901.

On June 23, 2009, at 7:42 p.m., Dale Brunton sent an e-mail to Magdalena Swieton conveying a message to defendant Gary Gregory:

> Dear Gary,
>
> We have discussed this at great lengths among ourselves as well as reviewed what our legal rights are when goods are rejected without substantiation.

-23-

So, I have to reiterate our position once again.

[Because] Unilink accepted the shipments, it can only
claim damages against Food Team: (1) if it notified
Food Team within a reasonable time of the alleged
quality problems; and (2) it obtained an inspection by
a neutral third party that proves the produce shipped
by Food Team on these loads did not meet the contract
grade A on arrival.  Since Unilink met neither of
these two requirements to assert damages, it owes Food
Team the total due on these below-mentioned shipments
[(invoices 4111, 1015, 1014, 1012, 1008)] of
$93,022.49.  Please pay this amount due no later than
Friday, June 26th.

* * *

Regarding unfulfilled contracts for broccoli, red
pepper, and cauliflower.  Please inform us of your
intention as to resumption of shipment.  We expect
your answer no later than tomorrow.

Best Regards,
Dale Brunton[68]

On June 23, 2009, at 9:10 p.m., Magdalena Swieton sent

an e-mail to Dale Burnton, conveying a message from defendant

Gary Gregory, which stated:

Dear Dale,

Please cancel the balance of our contracts.
This action is taken as a result of numerous quality
problems existing on your deliveries.  Please
acknowledge receipt of this correspondence.
Thank you!

Gary[69]

---

[68]       Plaintiff's Trial Exhibit 19 at page 3, copy of e-mail from Dale
Brunton to Magdalena Swieton sent June 23, 2009 at 7:42 p.m.

[69]       Plaintiff's Trial Exhibit 19 at page 1, copy of e-mail from
Magdalena Swieton to Dale Brunton sent June 23, 2009 at 9:10 p.m.

On June 27, 2009 Dale Brunton further responded to the June 23, 2009 cancellation e-mail as follows:

> Dear Gary,
>
> 1. Regarding your cancellation of outstanding contracts, it represents a breach of contract, based on unsubstantiated claims. We will hold Unilink LLC responsible for all damages.
>
> 2. Regarding cargo referred to in [Magdalena Swieton]'s e-mail of 6/19 as rejected. The rejections are not in accordance with commercial law and are unsubstantiated. However to protect our fiduciary interest we will take possession of these goods. We will hold Unilink LLC responsible for any damages sustained no[t] limited to the re-sale of this product.
>
> Best Regards,
> Dale Brunton[70]

Unilink diverted to the Kreider's third-party cold storage facility some, or all, of the produce which arrived between March 25 and April 28, 2009 relating to six invoices: invoice 1019 (broccoli) delivered March 25, 2009;[71] invoice 1008 (broccoli) delivered April 13, 2009;[72] invoice 1012 (broccoli) delivered April 15, 2009;[73] invoice 1014 (broccoli) delivered

---

[70]      Plaintiff's Trial Exhibit 19, e-mail from Dale Brunton to Magdalena Swieton.

[71]      Defendants' Trial Exhibit 2C, Unilink Scoring Sheet dated March 25, 2009 re. invoice 1019.

[72]      Defendants' Trial Exhibit 2A, Unilink Scoring Sheet dated April 13, 2009 re. invoice 1008; Defendants' Trial Exhibit 2B, Scoring Sheet dated April 14, 2009 re. invoice 1008.

[73]       Defendants' Trial Exhibit 2D, Unilink Scoring Sheet dated April 15, 2009 re. invoice 1012.

-25-

April 21, 2009;[74] invoice 1015 (broccoli) delivered April 28,

2009;[75] and invoice 4111 (cauliflower) delivered April 28, 2009.[76]

It is unknown on precisely which date or dates each of

these six loads was diverted to the third-party cold storage

facility, but invoice 4111 (cauliflower) was diverted to

Kreider's prior to May 14, 2009, and invoices 1019, 1008, 1012

1014, and 1015 (each broccoli) were diverted to Kreider's prior

to July 13, 2009.

In July 2009, following Unilink's June 23, 2009

cancellation of the balance of the its contracts with Food Team,

Food Team arranged for two additional third-party inspections of

the Food Team produce which Unilink had diverted to Kreider's

cold storage facility.

On July 13, 2009 an inspection was conducted for the

produce on invoices 4111 (cauliflower), 1019 (broccoli), 1015

(broccoli), 1014 (broccoli), 1012 (broccoli), and 1008

(broccoli).  An Inspection Report was generated for the produce

by invoice.  The report for invoice 4111 did not indicate the

presence of any freezer burn.  Moreover, the reports for each of

the broccoli invoices for which an inspection was done -- 1019,

---

[74]     Defendants' Trial Exhibit 2E, Unilink Scoring Sheet dated
April 21, 2009 re. invoice 1014.

[75]     Defendants' Trial Exhibit 2F, Unilink Scoring Sheet dated
April 28, 2009 re. invoice 1015.

[76]     Defendants' Trial Exhibit 2G, Unilink Scoring Sheet dated
April 28, 2009 re. invoice 4111.

1015, 1014, 1012, and 1008 -- indicate that each was checked for the presence of worms (which defense witnesses described to be visible to the naked eye) and that none were found.  Photographs of the broccoli samples taken during this inspection do not show any worms.[77]

 During her deposition, Magdalena Swieton stated that photographs of the alleged worms were taken and that those photographs, and some worms themselves, were sent by Unilink through Federal Express to Food Team.[78]  However, at trial, defendants did not offer and admit into evidence any such photographs, actual worms, or documentation showing that such items were sent by Unilink to Food Team.

 On July 15, 2009 an inspection of the produce from Food Team diverted to Kreider's cold storage facility by Unilink was conducted by the Agricultural Division of SGS North America Inc.  Each of the diverted shipments of Food Team broccoli sent by Unilink to Kreider's cold-storage facility were inspected and no worms were found or observed.[79]  Similarly, the Unilink cauliflower (invoice 4111) diverted to Kreider's cold storage

---

[77]  See Plaintiff's Trial Exhibit 20, Inspection Reports by Ms. Zhu dated July 13, 2009 and accompanying photographs.

[78]  Plaintiff's Trial Exhibit 28, Swieton Deposition at page 26.

[79]  Plaintiff's Trial Exhibit 21, Inspection Report of SGS North America Inc., Agricultural Division, dated July 21, 2009, at page 1.

was inspected and the report does not indicate the presence of freezer burn.[80]

All of Unilink's checks issued to Food Team cleared banking channels and Food Team did not refund any payments made by Unilink.

The broccoli delivered by plaintiff Food Team to defendant Unilink and subsequently diverted by Unilink to Kreider's cold-storage facility did not contain worms and was not otherwise compromised by the presence of nails or other foreign objects. The cauliflower delivered by plaintiff Food Team to defendant Unilink and subsequently diverted by Unilink to Kreider's cold-storage facility was not compromised in quality by the presence of freezer burn, or otherwise.

Unilink did not divert the produce on invoices 2901, 4115, or 1017 to the third-party storage facility. Unilink attempted to assert a credit toward payment on invoice 2901 in check number 13698. Unilink did not issue a check to Food Team for payment against invoices 4115 or 1017, nor did Unilink assert a credit toward payment toward invoice 4115 or 1017 in any check issued to Food Team.

In August 2010, Seneca Food purchased all of Unilink's assets, including Unilink's inventory, machinery, and accounts receivable and payable. More specifically, the actual produce

---

[80]     Plaintiff's Trial Exhibit 21, Inspection Report of SGS North America Inc., Agricultural Division, dated July 21, 2009, at page 2.

billed on the three PACA-protected invoices -- namely, invoice 2901 (red pepper strips), invoice 4115 (cauliflower), and invoice 1017 (broccoli) -- or the money received from the sale of that produce by Unilink to its customers, was among the assets sold to Seneca Foods for $1,400,000.00.

All proceeds from Unilink's sale of its assets to Seneca Foods were transferred to, and are still held by, former-defendant Pennsylvania Food Group LLC (Unilink's sole shareholder).

### CONCLUSIONS OF LAW

1.    Defendant Unilink breached its agreements with plaintiff Food Team by (A) failing to pay for the produce which was delivered to, and accepted by, defendant Unilink, and (B) repudiating the balance of the produce which remained to be shipped pursuant to the provisions of the broccoli and cauliflower contracts.

2.    Accordingly, defendant Unilink is liable to plaintiff Food Team for $23,281.95 for the delivered-and-accepted non-PACA-trust loads of produce.

3.    Plaintiff Food Team did not breach the broccoli contract or the cauliflower contract because plaintiff Food Team did not deliver to defendant Unilink broccoli infested with worms or contaminated by other foreign material or cauliflower damaged by freezer burn.

-29-

**89**

4.    Accordingly, plaintiff Food Team is not liable to defendant Unilink on the Second Counterclaim for breach of contract seeking recover of freight charges, pallet costs, and storage costs related to the produce diverted to the third party cold storage facility.

5.    Defendant wrongfully-repudiated the yet-to-be-shipped produce under the broccoli and cauliflower contracts.

6.    Plaintiff resold the wrongfully-repudiated broccoli and cauliflower to replacement buyers and defendant Unilink did not carry its burden to establish that plaintiff's mitigation resale was unreasonable.

7.    Accordingly, defendant Unilink is liable to plaintiff Food Team for $23,794.73 for the delivered-and-accepted non-PACA-trust loads of produce.

For the reasons expressed below, I find in favor of plaintiff Food Team and against defendants Unilink, Gary Gregory, Marc Beheagel, and Akbar Boutarabi on plaintiff's PACA-trust claims for failure to pay; and against defendant Unilink on plaintiff's non-PACA failure to pay claim and wrongful repudiation claim.  Moreover, I find in favor of plaintiff Food Team and against defendant Unilink on the Unilink counterclaim pursued at trial.  An accompanying Verdict dated September 30, 2013 is entered in accordance with this Adjudication.

## DISCUSSION

### Burden of Proof

A plaintiff asserting a breach of contract claim bears the burden of proof concerning the elements of its claim and must establish them by a preponderance of evidence. Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc., 247 F.3d 79, 102 (3d Cir. 2001)(applying Pennsylvania law); see 23 Williston on Contracts § 63:14 (4th ed. 2013).

Where a defendant alleges a breach of contract in a counterclaim, that defendant, as the party asserting the claim, bears the burden of proving the requisite elements at trial. Yellowbook Inc. v. Always in Service Inc., 2013 WL 4051263, at *9 (E.D.Pa. Aug. 12, 2013)(Robreno, J.)(citing Omicron Systems v. Weiner, 860 A.2d 554, 564 (Pa.Super.Ct. 2004)).

Once the elements of the breach of contract claim are established, a defendant has the burden of proof as to any affirmative defenses which it asserts. See Prusky v. ReliaStar Life Insurance Company, 532 F.3d 252, 258 (3d Cir. 2008); see also 23 Williston on Contracts § 63:14 (4th ed. 2013).

Under Pennsylvania law, mitigation (or, rather, a claimant's failure to mitigate its damages) is an affirmative defense, for which the breaching party bears the burden of proof. Prusky, 532 F.3d at 258.

-31-

91

To prove a failure to mitigate, the party asserting the defense must show: "(1) what reasonable actions the plaintiff ought to have taken, (2) that those actions would have reduced the damages, and (3) the amount by which the damages would have been reduced." Prusky, 532 F.3d at 258.

### Failure to Pay PACA Invoices

Plaintiff Food Team seeks to enforce payment to plaintiff Food Team from the PACA trust pursuant to 7 U.S.C. § 499e(c)(4).[81]

Here, three of the invoices for delivered produce which were submitted by plaintiff Food Team to defendant Unilink contain the requisite language to provide notice of, and trigger protection under, section 499e(C) of the PACA: namely, invoices 2901 (red pepper strips), invoice 4115 (cauliflower), and invoice 1017 (broccoli).

My May 17, 2012 Order, for the reasons expressed in the accompanying Opinion, granted plaintiff's motion for summary judgment with respect to invoices 2901, 4115, and 1017, the PACA-trust invoices, and entered judgment against defendant

---

[81]    Section 499e(c)(4) provides, in pertinent part, that where a plaintiff-seller includes sufficient PACA-trust-preservation language on its invoices (as with invoices 2901, 4115, and 1017 here), "[t]he seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received." 7 U.S.C. § 499e(c)(4) Section 499e(c)(5), in turn, provides that such a seller (the trust beneficiary) may bring an action to enforce payment of the invoice from the trust.  7 U.S.C. § 499e(c)(5).

-32-

92

Unilink, LLC, as well as individual defendants Gregory, Behaegel, and Boutarabi.

On the first day of the non-jury trial, plaintiff dismissed with prejudice all claims (including the PACA-trust enforcement claim in Count I) against defendants Pennsylvania Food Group, LLC and Mike Moore. Therefore, plaintiff's claim in Count I has been disposed of with respect to all defendants. Nonetheless, I will address again the issue of individual liability as to defendants Gregory, Behaegel, and Boutarabi in light of the position taken in Defendants' Post-Trial Memorandum that the basis for their individual liability has not been sufficiently established.[82]

### Individual Liability Under the PACA

While a plaintiff-seller pursues primary liability against a PACA-licensed buyer-defendant (typically, as with Unilink here, a business entity), a seller-plaintiff may seek to recover payment on the balance of its PACA trust claims against persons who may be found secondarily or individually liable to the PACA trust beneficiary. Bear Mountain Orchards, Inc. v. Mich-Kim, Inc., 623 F.3d 163, 167-168, 170-172 (3d Cir. 2010); Weis-Buy Services, Inc. v. Paglia, 411 F.3d 415, 418-421 (3d Cir. 2005).

---

[82]     Defendants' Post-Trial Memorandum at pages 7-8.

"Individual liability in the PACA context is not
derived from the statutory language, but from common law breach
of trust principles." Weis-Buy, 411 F.3d at 421 (citing Sunkist
Growers v. Fisher, 104 F.3d 280, 282 (9th Cir.1997)). "Under
the common law, the trustee of a trust is under a duty to the
beneficiary in administering the trust to exercise such care and
skill as a man of ordinary prudence would exercise in dealing
with his own property." Id.

The Third Circuit explained in Weis-Buy that liability
arising from this duty is distinct from the liability that
arises when the corporate veil is pierced:

> An individual who is in the **position to control** the
> [PACA] trust assets **and** who **does not preserve them** for
> the beneficiaries has breached a fiduciary duty, and
> is personally liable for that tortious act. This legal
> framework is to be distinguished from the piercing the
> veil doctrine, where the corporate form is disregarded
> because the individual has either committed a fraud,
> or because the corporation is a "shell" being used by
> the individual shareholders to advance their own
> purely personal rather than corporate ends.

Id. (quoting Morris Okun, Inc. v. Harry Zimmerman, Inc.,
814 F.Supp. 346, 348 (S.D.N.Y. 1993))(emphasis added).

Although the mere failure to pay a PACA-protected
invoice on time does not demonstrate a "dissipation or misuse of
trust assets", ZAS International Agriculture, B.V. v. ZAS USA,
Inc., 1998 WL 469958, at *2 (E.D.Pa. Aug. 7, 1998)(Waldman, J.),
the regulations promulgated by the United States Department of

-34-

94

Agriculture ("USDA") pursuant to the PACA define "dissipation" as "any act or failure to act which *could* result in the *diversion of trust assets* or which could prejudice *or impair the ability of unpaid suppliers*, sellers, or agents *to recover money owed in connection with produce transactions*." 7 C.F.R. § 46.46(a)(2).

The USDA regulations further require PACA-trust assets to be maintained "in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities" and that "[a]ny act or omission which is inconsistent with this responsibility, *including dissipation* of trust assets, is unlawful and in violation of [7 U.S.C. § 499b]." 7 C.F.R. § 46.46(d)(1).

In August 2010, Seneca Food purchased all of Unilink's assets, including Unilink's inventory, machinery, and accounts receivable and payable. More specifically, the actual produce billed on the three PACA-protected invoices -- namely, invoice 2901 (red pepper strips), invoice 4115 (cauliflower), and invoice 1017 (broccoli) -- or the money received from the sale of that produce by Unilink to its customers, was among the assets sold to Seneca Foods for $1,400,000.00.

The entirety of the proceeds from Unilink's sale of its assets to Seneca Foods were transferred to, and are still held by, former-defendant Pennsylvania Food Group LLC (Unilink's

-35-

sole shareholder). In other words, Unilink sold all of its assets (including PACA-protected assets) to Seneca Foods in exchange for $1.4 million (now including PACA-protected assets) and directed the $1.4 million (now including PACA-protected assets) to another entity, namely Pennsylvania Food Group, LLC. Moreover, defendants Gregory, Behaegel, and Boutarabi were members of Unilink, LLC (which transferred $1.4 million, including PACA-trust assets) and among the seven shareholders of Pennsylvania Food Group, LLC (which received $1.4 million from Unilink, including PACA-trust assets).

Accordingly, to the extent that defendants seek, through their post-trail memorandum, to have the court alter its prior ruling on Plaintiff' Motion for Summary Judgment that defendants Gregory, Behaegel, and Boutarabi are subject to secondary, individual liability on plaintiff's PACA-trust claims, that request is denied.

## Failure to Pay Non-PACA Invoices

In my May 17, 2012 Order, and for the reasons expressed in the accompanying Opinion, I granted Plaintiff's Motion for Summary Judgment to the extent that it sought a declaratory ruling that defendant Unilink accepted, and had a duty to pay, six invoices which did not contain PACA trust-preservation language: namely, invoices 4111 (cauliflower), 1019, 1008, 1012, 1014, and 1015 (each broccoli). Moreover, by

-36-

my May 17, 2012 Order, I entered judgment in favor of plaintiff
Food Team International, LTD and against defendant Unilink, LLC
on invoices 1008 ($23,475.80) and 1015 ($23,133.40).

Defendant Unilink asserted payment of those invoices
as an affirmative defense and pursued that defense at trial.
Invoices 1012 ($22,598.40) and 1014 ($23,133.40) were paid in
full by Unilink check number 13481, and invoice 1019
($23,540.00) was paid in full by check number 13382.

Additionally, invoice 1008 was paid in part
($1,458.41)[83] by check number 13481, leaving an unpaid balance
due on invoice 1008 of $22,017.39.  Invoice 1015 was not paid by
Unilink, leaving an unpaid balance due on invoice 4111 of
$23,133.40.  Invoice 4111 was paid in part ($786.24) by Unilink
check number 13698, leaving an unpaid balance due on invoice
4111 of $20,969.76.

Accordingly, after applying the payments which
defendant Unilink proved at trial, the remaining balance due on
the six non-PACA loads which defendant Unilink accepted and for
which it has a duty to pay is $66,120.55, which sum is comprised
of $22,017.39 remaining on invoice 1008, $23,133.40 remaining on
invoice 1015, and $20,969.76 remaining on invoice 4111.

However, defendant Unilink owes $44,837.82 to
plaintiff Food Team for produce which was subsequently diverted

---

[83]        The total amount charged on invoice 1008 is $23,475.80.

to Kreider's cold-storage facility and then resold by plaintiff Food Team to replacement buyers for $42,838.60. Accordingly, defendant Unilink is entitled to an offset in the amount of $42,838.60 against the $66,120.55 due on outstanding invoices for the wrongfully-diverted produce. Therefore, the total amount due to plaintiff Food Team from defendant Unilink for outstanding invoices on wrongfully-diverted produce is reduced to $23,281.95.

### Wrongful Repudiation of Yet-to-be-Shipped Loads

Plaintiff Food Team claims that by directing it, on June 3, 2009, to stop shipments until further notice, and by cancelling, on June 23, 2009, all remaining shipments, defendant Unilink wrongfully repudiated the remaining broccoli and cauliflower which was to be shipped under the contracts.

Because Unilink cancelled the balance of the shipments under the broccoli and cauliflower contracts, and because I am not persuaded by the evidence and testimony adduced at trial that, in fact, the broccoli which Food Team shipped to Unilink actually contained worms and the cauliflower was damaged by freezer burn, I conclude that defendant Unilink cancelled the balance of those contracts without reasonable cause.

Based upon defendant Unilink's direction to stop shipments and its subsequent cancellation of all further shipments, defendant Unilink wrongfully repudiated 557,200 of

-38-

98

the 1,100,000 pounds of broccoli to be shipped under the broccoli contract (P.O. 6122) at the price of $0.535 per pound; and 297,640 of the 500,000 pounds of cauliflower to be shipped under the cauliflower contract at the price of $0.42 per pound. Accordingly, the contract value of the wrongfully-repudiated broccoli is $298,102.00, and the contract value of the wrongfully-repudiated cauliflower is $125,008.80.

### Resale of the Wrongfully-Repudiated Loads

The contract value of the wrongfully-repudiated (and, thus, not shipped to Unilink) broccoli was $298,102.00, and that broccoli was sold and shipped to other buyers for a total price of $284,868.03, for a loss on the mitigation resale of the repudiated broccoli of $13,233.97.[84]

The contract value of the wrongfully-repudiated cauliflower was $125,008.80, and that cauliflower sold and shipped to other buyers for a total price of $114.448.04, for a loss on the mitigation resale of $10,560.76.

Plaintiff, through Attorney Keaton, withdrew its claim for expenses incurred in the mitigation resale of the diverted and wrongfully-repudiated produce.[85]

Defendants are correct that plaintiff Food Team had an affirmative duty to mitigate its damages,[86] plaintiff satisfied

---

[84]     See Plaintiff's Trial Exhibit 24.

[85]     N.T. Day 1 at page 43.

that duty by obtaining buyers for all wrongfully diverted and wrongfully repudiated broccoli and cauliflower.

To prove a failure to mitigate, the party asserting the defense must show: "(1) what reasonable actions the plaintiff ought to have taken, (2) that those actions would have reduced the damages, and (3) the amount by which the damages would have been reduced." <u>Prusky</u>, 532 F.3d at 258.

I conclude that defendants have not carried their burden of proof on the failure-to-mitigate defense. Plaintiff Team resold all of the diverted and wrongfully-repudiated -- some at prices above, and some at prices below, the prices negotiated the between Food Team and Unilink the previous year. Accordingly, plaintiff Food Team has sustained its claim for wrongful repudiation of the unshipped balance of produce under the broccoli and cauliflower contracts and has demonstrated damages in the amount of $23,794.73, comprised of $13,233.97 on wrongfully-repudiated broccoli and $10,560.76 on wrongfully-repudiated cauliflower.

### Unilink's Remaining Counterclaim

As noted in the Non-Jury Trial subsection of the above Procedural History, plaintiff Food Team agreed to the entry of judgment against it in the amount of $3,916.00 on the First Counterclaim asserted by defendant Unilink without conceding or

---

[86] Defendants' Proposed Findings and Conclusions at ¶ A.

admitting to having committed any breach of contract as alleged by defendant Unilink.

Defendant Unilink pursued its Second Counterclaim against plaintiff Food Team seeking $10,398.00 incidental damages incurred by Unilink in storing the produce from the six invoices which were diverted by Unilink to the third-party cold storage facility after they were unloaded and accepted at Unilink's facility.

As the party asserting the counterclaim, defendant Unilink had the burden at trial of proving a breach entitling it to those incidental damages. Here, that required defendant Unilink to prove by a preponderance of evidence that the broccoli delivered by Food Team and later diverted by Unilink was contaminated by the presence of worms, and that the cauliflower delivered by Food Team and later diverted by Unilink suffered from freezer burn. Based upon the evidence submitted at trial, I conclude that defendant Unilink did not carry that burden. Accordingly, I enter judgment in favor of plaintiff Food Team and against defendant Unilink, LLC on the Second Counterclaim.

### CONCLUSION

For all the forgoing reasons, I enter the accompanying Verdict in favor of plaintiff Food Team International, LTD, and

against defendant Unilink, LLC, in the amount of $23,281.75 on plaintiff's non-PACA-trust claims for failure to pay invoices.

I also find in favor of plaintiff and against defendant Unilink in the amount of $23,794.73 on plaintiff's non-PACA-trust claim for wrongful repudiation concerning yet-to-be-shipped broccoli and cauliflower.

On plaintiff's non-PACA-trust claims for failure to pay, I find in favor of individual defendants Gary Gregory, Marc Beheagel, and Akbar Boutarabi, and against plaintiff Food Team.

Finally, on the Second Counterclaim asserted by defendant Unilink, LLC, for breach of contract in supplying defective produce, I find in favor of plaintiff and against defendant Unilink.

```
                IN THE UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF PENNSYLVANIA


FOOD TEAM INTERNATIONAL, LTD,       )
                                    )      Civil Action
               Plaintiff            )      No. 10-cv-03584
                                    )
        vs.                         )
                                    )
UNILINK, LLC;                       )
GARY GREGORY;                       )
MARC BEHAEGAL; and                  )
AKBAR BOUTARABI,                    )
                                    )
               Defendants           )
```

## CIVIL JUDGMENT

BEFORE THE HONORABLE JAMES KNOLL GARDNER

**AND NOW**, this 30th day of September, 2013, after trial without jury before the undersigned on May 18, 21-22, and 24, 2012; and based upon the Findings of Fact, Conclusions of Law, and Discussion contained in the accompanying Verdict and Adjudication,

**IT IS ORDERED** that Judgment be and the same is hereby entered in favor of plaintiff, Food Team International, LTD and against defendant, Unilink, LLC in the amount of $47,076.48.

**IT IS FURTHER ORDERED** that the Clerk of Court shall close this case for statistical purposes.

BY THE COURT

ATTEST:


_/s/ Jennifer Fitzko_____
Jennifer Fitzko, Deputy Clerk to
Judge James Knoll Gardner

Civ 1 (8/80) civjud.frm